Erbehan, J.,
delivered tbe opinion of tbe Court.
This suit is brought to recover from plaintiff in error tbe value of $900 in gold, or said sum, as there are several counts in tbe declaration, deposited by Smith with tbe firm of Mariner & Curtis, in tbe city of Memphis, in August, 1866. Suit was commenced against tbe other member of tbe firm, Curtis, but no process served on him, and suit dismissed as to him.
The material facts on which tbe questions presented in this record are raised, are substantially as follows:
Tbe said firm was a bouse in the city of Memphis engaged in tbe boot and shoe business. Smith was in Memphis in August, 1866; went to the house of the firm, and deposited with their clerk and book-keeper, Wright, $900 in gold, which was counted by Wright, and put into the safe, as we assume, in the presence *205 of Smith. The next day witness, Sherrod, saw Mariner, at the request of Smith, and instructed him, for the plaintiff below, to sell the gold if the premium rose to 50 per cent. If it did not, to keep it until Smith returned from Mississippi, where he was going, and return it to Smith. Mariner made no objection to the deposit, and promised to sell the gold on the terms indicated, but expressed his doubts as to the premium rising to the sum required.
The money was stolen from the safe, and, on' return of Smith, in eight or ten days, he applied for it, and learned of its loss. Mariner stated to Smith at this time that he had never seen the gold, and supposed their porter had stolen it. It seems at the same time this money was stolen, other moneys were taken belonging to a Miss Curtis, a sister of Curtis the member of the firm. Mariner stated also that he had arrested the porter for the supposed theft, but he had been discharged for the want of proof. He had also employed detectives to endeavor to discover the thief, but they had failed to do so. There were, perhaps, other moneys of the firm taken from the safe at the same time. The proof shows, too, that the firm kept their valuable papers, as well as money, in the safe, and gave the usual care and attention of prudent business men to the safety of their money and papers.
The case must turn here on the charge of the Circuit Judge. The questions presented for his decision involved the liability of a bailee without reward, or simple mandatary, and of a bailee for reward; and whether in this case there was a contract for hire, either ex *206 press or implied/ and if so, what was the amount of diligence required of such bailees.
He stated to the jury, that if the bailment was a mere deposit, without reward, the defendant would only be bound to ordinary diligence, and in case of loss by theft or otherwise, would not be liable. He then adds, “the law of bailments without reward holds the bailee bound to such diligence as a prudent man would exercise in his own affairs.” This was all very well; but he continues, “if the nature of the bailment was of such character as to require extraordinary care and responsibility on the part of the bailee, the law will imply reward;” and winds up the sentence by saying, that “if this was a bailment for a fee or reward, express or implied, the defendant would be bound for ordinary negligence or apparent negligence, and plaintiff would be entitled to recover.”
We know of no rule of law on the subject of bail-ments which would hold a party liable for mere apparent neglect. Certainly, in 'every class of bailments, the negligence required to fix liability, whether the law in the particular- case holds the party ^responsible for slight or gross negligence, must be real, actual failure to perform the duties imposed on the bailee by the contract into which he has entered; and mere apparent negligence, which was not real, would not fix responsibility upon him.
The undertaking of a mandatary, or bailee without compensation, is sometimes laid down to be a trust, which imposes upon the bailee fidelity in its execution as a trustee. We think it is better defined by the *207 simple idea • of a contract, by which the party undertakes to do what is agreed between himself and the bailor, and that the liabilities of the bailee and rights of the bailor grow fairly out of the elements that makeup that contract, to be ascertained by the express terms of the contract, as explained by all the surrounding and attending facts and circumstances of the case. As in this case, if it be assumed that the undertaking of the parties to keep the gold, and invest or return it, was without reward, then the terms of the contraet, as defined by this undertaking and its attendant circumstances, would have been, that as it was placed in his safe with his own money and papers, that it should be kept in that place of deposit, and such care taken of it as would or ought to be given by an ordinarily prudent man of the deposits of like character placed in the same place of deposit. As a matter of course, the amount of care and precaution to be taken of the deposit, must necessarily be largely influenced by the greater or less value of the article deposited, and such naturally would be the understanding of the parties at the time, and would be an element of the contract as made, founded on such understanding.
This idea is sustained by opinion of McKinney, J. in case of Colyar, trustee, v. Taylor, 1 Col., 378. He says: “The degree of care required of a mandatary, is essentially dependent upon the circumstances of the case. The general principle governing his liability is indeed the same in all cases, but its application is materially affected and varied by the circumstances of *208 each particular case. The bailor’s trusting him with the goods, is a sufficient consideration to require of him careful management. We hold, therefore, the sound principle in such cases to be, that the liability of bailee without reward, is to be determined by a performance bona fide of the fairly understood terms of the contract, ascertained by the express contract, explained by the surrounding and attendant circumstances, or of the failure to perform the terms of said contract, as it was understood by the parties at the time.
It is sometimes said, rather loosely, that such bailee is only responsible for gross negligence. This we think, as remarked by Kolfe K. in case of Wilson v. Brett, 11 Mecson & Welsby, 113, cited in Smith’s L. Cases, vol. 1, 421, is “nothing more than negligence with the addition of a vituperative epithet.”
Any neglect of the fairly understood terms of the contract, as above explained, by which the deposit was lost, would subject the bailee to liability for the injury resulting from such neglect, whether it might be characterized by the term gross, or a less forcible word. Yet it must be neglect to perform the stipulations and undertaking of his contract, that shall create this liability. We think a very sound and correct view of the liability of such bailee, or persons to whom goods are delivered without reward, is given in Smith’s L. Cases, “that the legal ground of such liability when goods are delivered, for injury or loss to the goods, is pretty much the same as that of one to whom they are not delivered, but from whose negligence or carelessness in *209 jury has ensued to them, or loss been sustained by the owner.” The gist of the plaintiff’s right of recovery in all such cases, is violation of contract, and injury to the bailor, resulting from such violation.
His Honor the Circuit Judge charged the jury, that if the nature of the bailment was of such a character as to require extraordinary care and responsibility on the part of the bailee, the law will imply reward, etc. Ye think this was not a correct statement of the law in reference to the facts of the case. The law might or might not imply a reward under the circumstances indicated. It would depend upon the fact whether the jury could gather from the surrounding-facts and circumstances that it was so understood by the parties; for if the bailee received the deposit, however valuable, or however much care and responsibility might be involved in its proper keeping, yet if he undertook to keep it gratuitously, or the jury can fairly see that such was the intention and understanding of the parties at the time of making the contract, or of the bailment, then the law would not, against such intention or understanding, imply a right to reward for the service. The law will never imply a liability under a contract against and opposed to the agreement of the partiés, nor turn that into a debt which was intended ■ to be gratuity.
We will not undertake to analyze this involved and most unsatisfactory charge, in order by construction to arrive at what we suppose to have been the meaning of the Court, or the understanding of the jury as to what that meaning was. We think that it is so *210 contradictory, and in the matters we have indicated, erroneous, that it is due to a fair administration of the law that another trial be had, before a jury, when the law can be given to them clearly,, to guide them in their investigation of the facts of the case, out of which the rights of the one party and the liabilities of the other must arise.
Reverse the judgment and remand the case.