### TRAVELERS INS. CO. v. REED CO.

#### No. 3562.

Court of Civil Appeals of Texas. Beaumont.

Dec. 21, 1939.

Rehearing Denied Jan. 10, 1940.

612

Pipkin & Pipkin, of Beaumont, for appellant.

Lamar Cecil, of Beaumont, for appellee.

WALKER, Chief Justice.

J. J. Brown v. The Reed Company, No. 51603 on the docket of the district court of Jefferson county, was an action by Brown, plaintiff, to recover damages against The Reed Company, defendant, on the following allegations:

"That prior to January 11, 1936, plaintiff contracted to purchase and did purchase of the defendant herein an electric refrigerator, known as a Frigidaire, paying a portion of the purchase price therefor in cash and obligating himself to pay the balance of the purchase price in installments; that by reason of misfortune and business reverses which were beyond his control, plaintiff failed and was unable to pay defendant certain of the installments for said Frigidaire as they matured; that after insistent demand by defendant for the payment of such past due installments plaintiff called at defendant's office and there related to the defendant the reasons for his inability to make prompt payment and said defendant agreed with plaintiff to grant to him and it did so grant to him additional time within which such installment payments could be made.

"Third: That after defendant agreed with plaintiff to grant him additional time within which to make such past due installment payments as aforesaid and prior to the expiration of the time agreed upon between them and on or about, to-wit, the 11th day of January, 1936, one J. K. Bunch, the duly authorized agent, servant, and employee of defendant, acting within the scope of his employment came to the home of plaintiff while plaintiff was absent from his home and asked plaintiff's wife if he could see this plaintiff; that plaintiff's wife stated to said Bunch that plaintiff was not at home but that he had been gone only about 10 minutes and that he, Bunch, could overtake him if he desired to see him. Plaintiff further alleges that the said J. K. Bunch, declined to endeavor to overtake plaintiff and stated to plaintiff's wife in a loud and vociferous manner that he had come to collect money on the note for the Frigidaire and money he was going to have; that said Bunch, continuing the use of loud and vociferous language, stated to plaintiff's wife that he was not going to wait another day for payment on the note and when plaintiff's wife stated to him that plaintiff had told her that he had made arrangements with defendant for an extension of time of payment on the note, he, the said Bunch, stated that plaintiff was lying and had made no such arrangement and that he, the said Bunch, was going to take the Frigidaire, put it on a block, sell it for $50.00 and sue the plaintiff for the rest and would take plaintiff's house and furniture in payment of whatever balance was due after he had sold the Frigidaire; that said Bunch thereafter in the same loud and vociferous manner threatened plaintiff's wife with law suits and the loss of her said home and furniture, and demanded payment on said note in a threatening manner and although repeatedly requested by plaintiff's said wife to leave her home, he refused to do so for a considerable period of time during all of which he continued to threaten her as aforesaid by the use of loud and vociferous language and thereafter upon leaving he yelled to plaintiff's said wife that her husband, the plaintiff herein, had better come to his, Bunch's office not later than the coming Monday or they would lose not only their Frigidaire but their home and furniture as well.

"Fourth: That the aforesaid transactions between plaintiff's said wife and Bunch, the agent, servant, and employee of defendant who was acting within the scope of his employment took place in plaintiff's private

residence within the hearing of his children and a stranger and by reason thereof his said wife was terror striken, humiliated and disgraced and put in fear of bodily harm, thus causing her to suffer great fear and anguish of body and mind and because thereof, she suffered a severe nervous shock and great pain of body and mind, and at the time of the occurrence aforesaid plaintiff's said wife was known by said Bunch to be pregnant and with child, or by the use of ordinary care such fact could and should have been known by him; that throughout the course of the transactions hereinabove related, plaintiff's said wife was in an extremely nervous condition by reason of the status of her health and the conduct of said Bunch, and by reason of such conduct and of said threats and because of the violent and cruel treatment on the part of said Bunch and his use of loud and vociferous language as aforesaid she became very frightened by reason of his acts and behavior and became very suddenly ill, suffering from nervous agitation and had a complete nervous breakdown to the extent that it was necessary for her children to put her to bed, where she remained until the 17th day of January, 1936, at which time she had a miscarriage, giving premature birth to her child. Plaintiff alleges that said Bunch knew, or by the use of ordinary care could and should have known that his acts and conduct would greatly frighten plaintiff's said wife and cause a severe shock of her nervous system and that such acts and conduct on the part of the said Bunch wounded the feelings of plaintiff's wife and caused her great physical pain and mental anguish and suffering. * * * And plaintiff further alleges that the defendant's agent, servant and employee, Bunch, then and there acting in the course of his employment with the defendant and in the furtherance of the said defendant's business was guilty of the following acts of negligence, each and all of which either jointly or separately were a proximate cause of the above and foregoing enumerated damages, harms, and injuries sustained by plaintiff's wife:

"(a) In going upon the plaintiff's property and entering his private residence and while there using loud and vociferous language.

"(b) In addressing plaintiff's wife in a loud tone of voice.

"(c) In addressing plaintiff's wife in a loud and vociferous language.

"(d) In failing to observe the pregnant condition of plaintiff's wife at the time and place in question.

"(e) In failing to leave plaintiff's premises when plaintiff's wife's agitated condition became apparent to him.

"(f) In continuing his use of loud and vociferous language after it became apparent to him that same was adversely affecting the state of mind of plaintiff's wife.

"(g) In failing to address plaintiff's wife and make his demands of her in a calm, gentlemanly tone of voice.

"(h) In threatening plaintiff's wife with lawsuits.

"(i) In threatening to seize by process of law or otherwise plaintiff's home and furniture.

"Plaintiff further says that while no specific intent on the part of defendant's agent, servant and employee, Bunch, to harm or injure plaintiff's wife is alleged, yet said agent, servant and employee knew that plaintiff's wife was a married woman and knew or should have known in the exercise of ordinary care that she might possibly have been pregnant and knew or should have known that any unseemly conduct on his part with reference to the use of loud and vociferous language or threats might reasonably be calculated to cause harm to plaintiff's wife, either mentally or physically or both; and defendant further alleges that the acts and conduct of the said Bunch as aforesaid, the duly authorized agent, servant, and employee of the defendant, while acting within the scope of his employment, were reckless and without provocation and constituted a tort and a breach of the peace and were in violation of the statutes and laws of this State and proximately caused the damages and injuries herein complained of. * * * that by reason of the injuries and the physical pain and anguish proximately caused by the reckless and negligent acts and conduct of defendant's said agent, servant, and employee while acting within the scope of his employment, plaintiff's said wife since her said injuries has been and will in the future be unable to assist plaintiff in his work or to do her housework and care for and mother her said children and that such inability on her part will probably last during the remainder of her natural life."

On the 11th day of January, 1936, and prior and subsequent thereto—the period of time in which Brown alleged that his wife

suffered her injuries—The Reed Company, hereinafter referred to as appellee, had in force and effect a policy of insurance with The Travelers Insurance Company, hereinafter referred to as appellant. The insuring clauses of the policy were as follows:

"I. To indemnify the Assured against loss by reason of the liability imposed upon him by law for damages because of bodily injuries, including death at any time resulting therefrom, accidentally sustained by any person or persons except those employed by the Assured or those to whom the Assured may be held liable under any Workmen's Compensation law.

\* \* \*

"II. Bankruptcy or insolvency of the Assured shall not relieve the Company of any of its obligations hereunder. If any person or his legal representative shall obtain final judgment against the Assured because of any such injuries, and execution thereon is returned unsatisfied by reason of bankruptcy, insolvency or any other cause, or if such judgment is not satisfied within thirty days after it is rendered, then such person or his legal representatives may proceed against the Company to recover the amount of such judgment, either at law or in equity, but not exceeding the limit of this Policy applicable thereto."

"2. To defend for the Assured any suit seeking damages for such injuries, even if such suit is groundless, false, or fraudulent."

"3. To pay all costs taxed against the Assured in any such defended suit and all expenses incurred by the Company, also all interest accruing after entry of judgment until the Company has paid, tendered or deposited in Court such part of such judgment as does not exceed the limit by the Assured for such immediate surgical relief as shall be imperative at the time of injury."

"D. In the event of accident written notice shall be given by or on behalf of the Assured to the Company or any of its authorized agents as soon as is reasonably possible thereafter."

"E. No recovery against the Company shall be had hereunder until the amount of loss or expense shall have been finally determined either by judgment against the Assured, the claimant, and the Company, nor in either event unless suit is instituted within two years thereafter."

"F. Any specific statutory provision in force in the state in which it is claimed that the Assured is liable for any such accident as is covered hereby shall supersede any provision in this Policy inconsistent therewith."

On the back of the policy was endorsed in large letters: "Public Liability Policy." From January 11, 1936, until the service of citation upon Randolph C. Reed, President and Executive Officer of The Reed Company, on December 14, 1937, in the suit of J. J. Brown against The Reed Company, neither The Reed Company nor any of its officers had notice of the alleged occurrence made the basis of Brown's suit against The Reed Company. On the 8th day of January, 1938, appellant filed its answer to the Brown suit. On February 28, 1938, appellant was duly notified of the suit of J. J. Brown against him, and was furnished all particulars concerning such alleged action. Thereafter, the matter was referred by the appellant to its investigator, Mr. James Bergin, Jr., who conducted a full and complete investigation of the case with the full cooperation of appellee and its attorney. After receiving notice of the Brown suit against appellee, and after completing its investigation of the facts, on the 24th day of March, 1938, appellant wrote appellee that the Brown suit, on the facts alleged, was not covered by its policy, and refused to make the defense for the reason—the sole reason—that in the petition there was "no allegation of bodily injury accidentally sustained." On receipt of that letter appellee, by its attorney, wrote appellant that the Brown suit was set for trial on the 11th day of April, 1938, and furnished it a copy of the amended pleading which we have summarized above; in that letter appellee made the following demand upon appellant: "We now make demand on you to defend this case and insist that same is covered by the contract of insurance issued by you to our client, and in the event you do not see fit to protect your assured, The Reed Company, in this instance, this will advise that we will undertake the defense of this case under protest and will [with] full reservation of any rights we may have against you under this contract of insurance." On the 5th day of April, 1938, appellant wrote appellee's attorney: "You are correct in your assumption that we do not intend to defend this suit inasmuch as the case is not covered under our insurance contract."

Appellant refused to defend the Brown suit and appellee was forced to employ attorneys to prepare and present its defense.

The Brown suit came on for trial on the 11th day of April, 1938, and on trial to the court without a jury the following judgment was entered:

"On this the 11th day of April, A. D. 1938, came on to be heard the above styled and numbered cause, and came the parties, both in person and by their attorneys, and announced ready for trial, and a jury having been waived, the matters of fact as well as of law were submitted to the Court for its consideration, and it appearing to the Court that the parties to this suit had arrived at a settlement and compromise of all of the issues joined herein, under the terms of which said settlement and compromise the defendant, The Reed Company, is to pay to the plaintiff, J. J. Brown, the sum of Two Thousand ($2,000) Dollars, in full settlement and satisfaction of all of the issues in this cause, and of all claims and demands of any nature whatsoever which the said plaintiff may have or have had against said defendant, and the terms of said compromise and settlement having been fully explained to the Court, and after having heard the pleadings, evidence, and argument of counsel, and being fully advised in the premises, the Court is of the opinion that said agreed compromise and settlement is in all things just, fair and equitable to all parties and in all things approves same.

It is therefore ordered, adjudged, and decreed by the Court that the plaintiff, J. J. Brown, do have and recover of and from the defendant, The Reed Company, the sum of Two Thousand ($2,000) Dollars."

Appellee paid the $2,000 adjudged against it and on the 17th day of September, 1938, filed the suit at bar against appellant, alleging generally the facts given above, and prayed for judgment for the $2,000. Appellee also prayed for judgment for an attorney's fee in the sum of $400, as a reasonable fee incurred by it in the defense of the Brown suit, and for an attorney's fee of $300 for prosecuting the suit at bar; it also prayed for judgment for the expenses incurred in making the necessary investigation of the facts of the Brown suit and in preparing its defense.

On the 16th day of January, 1939, on trial of the suit at bar to the court without a jury, judgment was rendered in appellee's favor against appellant for all the relief prayed for. From that judgment appellant has duly prosecuted its appeal to this court.

Opinion.

There is no provision in the insurance contract supporting an action by appellee against appellant for the attorney's fee incurred by it in the prosecution of the suit at bar—the $300. Appellee's contract of insurance with appellant insured it "against loss," and not against liability. Under this construction of the insurance contract, appellee had an action against appellant only for the loss actually sustained, and not for liability incurred. Universal Automobile Ins. Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, Comm. of App. On authority of that case, since appellee has not paid the attorney's fee of $400, incurred by it in the defense of the Brown suit, and one item of $25 charged by it against appellant in the preparation of that suit for trial, the judgment of the court in favor of appellee against appellant for these two items is without support. It follows that the judgment of the lower court in favor of appellee against appellant for the attorney's fee of $300 must be reversed and judgment here rendered in appellant's favor; on the other two items—the attorney's fee of $400 and the expense of $25—the judgment of the lower court must be reversed and the cause remanded for a new trial.

The next point to be reviewed: Were the injuries sustained by Mrs. Brown, on the allegations of Brown's petition, "accidentally sustained"? It appears on the face of the policy—Sec. (I) of the policy quoted above—that its purpose was protection against liability for the consequences of the negligence of the insured or its agent. Miller v. United States Fidelity & Casualty Co., 291 Mass. 445, 197 N.E. 75. So, if the injuries sustained by Mrs. Brown resulted from the "negligence" of appellee's agent Bunch, then her injuries were "accidentally sustained." But protection against liability on the ground of negligence was the extent of the coverage; appellee was not protected from the consequences of its own willful and intentional wrongs nor against the willful and intentional wrongs of its agent, committed with the intent to inflict injury. County Gas Co. v. General Accident Fire & Life, etc., Corp., Tex.Civ. App., 56 S.W.2d 1088.

Clearly "bodily injuries" sustained from the negligence—ordinary negligence—of the insured or his agents, acting within the scope of their employment, would be "accidentally sustained." And

with equal certainty it can be said that "bodily injuries" resulting from the willful acts of the insured or his agents, acting within the scope of their authority, committed with the intent to inflict injury, are not within the coverage of the policy. One cannot insure himself against the consequences of his willful acts, committed with the intent to inflict injury. Richardson v. The Fair, Inc., Tex.Civ.App., 124 S.W.2d 885.

A more serious question arises on the question of gross negligence: Should it be said that bodily injuries resulting from gross negligence—acts committed negligently, but not with the intent to inflict injury—were "accidentally sustained"? Under the jurisprudence of this state, we think the question should be answered in the affirmative. We have the same action both for ordinary negligence—the failure to exercise ordinary care—and gross negligence; and to the extent of compensation, both actions are governed by the same rules of law. A count on gross negligence includes all lesser degrees of negligence. Hays v. Gainsville St. R. Co., 70 Tex. 602, 8 S.W. 491, 8 Am.St.Rep. 624. Gross negligence implies nothing more than some degree of negligence. Cleveland, C. C. & St. L. Railway Co. v. Tartt, 7 Cir., 64 F. 830, 833. "Gross negligence" is nothing more than negligence "with the addition of a vituperative epithet." Mariner v. Smith, 52 Tenn. 203, 5 Heisk. 203, 208. Gross negligence is the absence of the care required under the circumstances. Galveston, H. & S. A. Railway Co. v. Cook, Tex.Sup., 16 S.W. 1038; it is but an omission of duty, not designed in willful mischief. Jacksonville, S. E. Railway Co. v. Southworth, 135 Ill. 250, 25 N.E. 1093. The only difference between the two actions is that in the action for gross negligence the injured party may recover punitive damages. Since on the issue of compensation the same rules of law govern both actions, and both actions are for "negligence", we think a policy of insurance, indemnifying the insured against loss resulting from negligence, should be construed to cover both ordinary and gross negligence. Whether or not such a policy should cover loss incurred by the insured on the issue of punitive damages is not at issue in this case.

Did the facts alleged by Brown in his petition against appellee constitute negligence, either ordinary or gross, or did such facts constitute an intentional and willful act committed by Bunch against Mrs. Brown, with the intent to injure her?

In his petition Brown charged that the acts committed by Bunch constituted negligence; an action within the coverage of the policy of insurance; an election of remedies which he had the right to make as between himself and appellee. But appellant was not bound by Brown's election. Its duty to defend the suit was measured by the alleged facts; Michels v. Boruta, Tex.Civ.App., 122 S.W.2d 216, it was not bound to assume the burden of the defense unless on the alleged facts Mrs. Brown's injuries were "accidentally sustained"; it was not bound to assume the defense, if, on the alleged facts, Bunch acted willfully with the intent to injure Mrs. Brown.

On the issue of appellant's duty to defend the Brown suit, the alleged acts of Bunch must be construed from his standpoint and not from the standpoint of Mrs. Brown. If from his standpoint he acted negligently, and not with the willful intent to inflict injury, appellant was obligated to assume the burden of the defense. What was the nature of Bunch's acts?

Construing the alleged acts of Bunch, it must be said that he acted wantonly and in reckless disregard of the rights and safety of Mrs. Brown, and without regard to the consequences of his acts. On this statement the alleged acts of Bunch exceeded ordinary negligence.

On the issue of gross negligence or willful intent to inflict injury, the alleged facts should be given the following construction; Bunch went to the Brown home to make a collection from Mr. Brown; all he did and said was for the purpose of forcing the collection from Mrs. Brown—his coarse language, his cruelty of act and word, his lies, his misrepresentation of the law; he did nothing with the willful intent to injure her. Defining gross negligence, we quote the following definition from Words and Phrases, Third Series, Vol. 3, page 994: " 'Gross negligence' is that entire want of care which would raise a presumption of conscious indifference to consequences, an entire want of care, or such a slight degree of care as to raise the presumption of entire disregard for, and indifference to, the safety and welfare of others; the want of even slight care or diligence. Foster v.

State, 102 Tex.Cr.R. 602, 279 S.W. 270." Words and Phrases, Second Series, Vol. 2, page 793: "'Gross negligence' is defined as that entire want of care which would raise a presumption of conscious indifference to consequences and as an entire want of care on the part of the employes, or such a slight degree of care as to raise the presumption of entire disregard and indifference to the safety and welfare of others. Gulf W. T. & P. R. Co. v. Letsch [Tex.Civ.App.] 55 S.W. 584, 587." The absence of the intent to inflict injury distinguishes negligence from other torts. Blunk v. Snider, 342 Mo. 26, 111 S.W.2d 163. On these authorities, the wrongs committed by Bunch against Mrs. Brown constituted gross negligence. So, appellant breached its contract with appellee when it refused to assume the burden of the defense of the Brown suit.

Whether or not Brown had a valid claim for damages against appellee on the facts alleged was not an issuable fact on the trial of the case at bar. Appellant was advised of the pendency of the suit and given an opportunity to defend it, and since on the alleged facts the policy afforded protection to appellee, it was appellant's duty to assume the defense. Having declined to discharge that duty, it cannot now retry the issue. Miller v. United States Fidelity & Casualty Co., 291 Mass. 445, 197 N.E. 75.

But appellant insists that the Brown case was not tried to judgment, but that judgment was entered on an agreed settlement, which was nothing more than a voluntary contract between Brown and Reed. The proper construction of the judgment entered in the Brown case denies that contention. While it affirmatively appears on the face of the judgment that the award of the $2,000 was the result of an agreement between Brown and appellee, yet it further appears that the issue of appellee's liability to Brown and the reasonableness of the agreed settlement were litigated; the court heard the pleadings, the evidence, and the argument of counsel, and concluded that the agreed settlement was "in all things just, fair and equitable to all parties." It was further decreed that the agreed settlement was "in all things" approved.

Appellant makes the further point that it did not have due notice of the suit filed by Brown against Reed. By denying liability on the ground that Brown's peti-

tion against appellee contained "no allegation of bodily injury accidentally sustained," appellant waived the provision stipulating for written notice. Couch Cyclopedia of Insurance Law, Vol. 7, Sec. 1593, announces the following proposition: "An insurer, by specifying a certain or particular defect or defects in proofs of loss, waives all other defects therein." The opinion in Haynes v. American Mutual Benefit Ass'n, Tex.Civ.App., 283 S.W. 199, by the late Mr. Chief Justice Hightower, speaking for this court, directly supports the proposition of law announced by Couch Cyclopedia of Insurance Law.

From what we have said, it follows that the judgment of the lower court awarding appellee judgment for the $2,000 paid in settlement of Brown's suit should be affirmed.

Accordingly it is ordered that the judgment of the lower court be in part reversed and rendered, in part reversed and remanded, and in part affirmed, all as indicated by what we have said above.