**TEXAS UNITED INSURANCE COMPANY, Appellant,**

v.

**BURT FORD ENTERPRISES, INC. and Burt Ford, Individually, and d/b/a Burt Ford Enterprises, Appellee.**

No. 12–83–0213–CV.

Court of Appeals of Texas, Tyler.

Jan. 30, 1986.

Rehearing Denied Feb. 27, 1986.

Jay N. Green, Potter, Quinn, Minton, Roberts & Ireland, Tyler, for appellant.

Charles H. Clark, Tyler, for appellee.

COLLEY, Justice.

This is a summary judgment case involving a dispute between plaintiff/appellee, Burt Ford, d/b/a Burt Ford Enterprises and Burt Ford Enterprises, Inc. (Ford), and defendant/appellant, Texas United Insurance Company (United), respecting policy coverage of a contractor's general liability policy issued by United to Ford. At trial both parties filed motions for summary judgment. The trial court denied United's motion but granted Ford's motion for interlocutory summary judgment. Thereafter, the trial court heard testimony as to attorneys' fees and damages and granted a judgment in favor of Ford for $28,273.22 representing damages paid under a settlement agreement to the plaintiffs in a property damage suit earlier filed and prosecuted against Ford and others, and attorneys' fees for Ford. We affirm in part and reverse and remand the cause in part.

Ford alleges in his live pleadings that he is in the construction business and formerly did business as Burt Ford Enterprises; that United issued a manufacturer's and contractor's liability insurance policy to Ford insuring Ford against certain risks. The policy limits were $100,000 for each occurrence. Ford alleges that Cecil Lasater and others filed a lawsuit[1] against him seeking judgment for damages resulting to plaintiffs' real and personal property from the collapse of a brick wall erected on a construction site adjacent to the plaintiffs' property. Ford avers that though the policy provisions required United to furnish him a defense to the suit, it refused to do so and also denied coverage of the claim asserted in the Lasater suit; and that after United refused to defend the suit, Ford retained counsel of his own who presented his defense in the suit. At trial in this suit Ford, under the allegations of his pleadings, sought to recover judgment for the amount of the *judgment* in Lasater's suit, expenses incurred, including attorneys' fees paid by him in defense of that suit, and reasonable attorneys' fees in the instant suit.

Ford filed a motion for summary judgment "on the issue of liability alone." The basis of the motion is that United wrongfully refused to defend the Lasater suit and thereby waived its policy defense of noncoverage. Attached to the motion were copies of United's insurance policy, plaintiffs' original petition in the Lasater suit, and a letter pre-dating the filing of the Lasater suit addressed to United and written by Ford's attorney advising United of Lasater's claim. The motion also was based on United's responses to certain requests for admissions and interrogatories propounded by Ford.

United filed its own motion for summary judgment as well as a response to Ford's motion. United's motion sought a take-nothing judgment against Ford based on the allegations of Lasater's petition, and Ford's cross-action in the Lasater suit that Ford's co-defendant Smotherman was an independent contractor. United alleged also a provision in the liability policy excluding coverage for property damage "arising out of operations performed for the named insured by independent contractors or acts or omissions of the named insured in connection with his general supervision of such operations." United

---

1. Cause No. 78–1356 on the docket of the District Court, Seventh Judicial District of Smith County, Texas, styled *Cecil Lasater, et al. v. E.B. Yale, et al.*

therefore asserted that it had no duty to defend the Lasater suit. The trial court denied United's motion and granted Ford's motion, signing an "Interlocutory Summary Judgment," reciting that "interlocutory summary judgment on the question of liability only is hereby rendered in favor of [Ford] ... against [United]...." This order was signed on August 30, 1982. On August 26, 1983, the case was called for trial and the only evidence received at trial was the testimony of Charles H. Clark, Ford's attorney. Based on Clark's testimony, the trial court, incorporating the interlocutory order determining United's liability in the case, signed a judgment on September 26, 1983, in favor of Ford. In response to United's request, the trial judge made and filed findings of fact and conclusions of law. In Finding 8 the trial judge found that in the Lasater suit "judgment was entered in favor of the plaintiffs and against the defendants in the amount of ... ($30,000)...." The trial court concluded that as a consequence of United's failure to defend Ford in the Lasater suit that United waived its policy defense of noncoverage.

We conclude that the admissible summary judgment evidence introduced establishes the following facts as a matter of law, to wit: (1) United was duly notified of the Lasater suit against Ford; (2) the process served on Ford in that suit was promptly delivered to the authorized agents of United; and (3) that United refused to defend Ford in the suit on the ground that the cause of action asserted therein was not within policy coverage. However, Ford failed to introduce in support of the summary judgment motion authenticated (sworn) or certified copies of the judgment and verdict, if any,[2] in the Lasater suit. Neither is there other summary judgment evidence establishing the judgment and the findings of fact upon which the judgment rested. When the case was called for trial after the entry of the interlocutory order purporting to establish the liability of United

ed to Ford, Ford produced one witness as heretofore noted, his attorney, Charles Clark. Clark testified that "the total settlement was $30,000"; that Ford agreed to pay half of that amount, and signed a note for $15,000 which was paid to counsel for the plaintiffs in the Lasater suit by three separate checks, two issued by Ford Enterprises, Inc., a corporation formed by Ford to succeed his former business, known as Burt Ford Enterprises and one issued by Ford individually.

United urges two broad points of error in this court, to wit: (1) "The trial court erred in granting the motion for summary judgment of plaintiff." and (2) "The trial court erred in failing to grant the motion for summary judgment of defendant."

■ Under its first point United argues that the cause of action asserted against Ford for damages was not covered by the policy when the allegations contained in the plaintiffs' petition in the Lasater suit against Ford are considered in light of the policy provisions. Therefore, United was not under a contractual duty to defend the suit and is not liable for the damages sought in this suit. Both parties to this appeal agree that the determination of whether an insurer has a duty to defend its insured is properly based on an analysis of the claim, i.e., the allegations made against the insured and the policy provisions. We agree that this is indeed the correct method of making such determination. *Heyden Newport Chemical Co. v. Southern General Insurance Company*, 387 S.W.2d 22, 24–25 (Tex.1965). United, however, contends that the language of the plaintiffs' petition in the Lasater suit, and the allegation made in Ford's cross-action, properly construed, shows that Ford, a general contractor, was sued for the negligent conduct of one Smotherman, a co-defendant, who was acting on the occasion of such negligence as an independent contractor, performing brick work for Ford on the con-

**2.** The record is conflicting as to whether the Lasater suit was tried to judgment or settled by the parties.

struction site. United says the claim against Ford was not covered because of an exclusionary clause of the policy providing that insurance furnished by the policy did not apply to: "(q) ... property damages arising out of operations performed for the named insured by independent contractors or acts or omissions of the named insured in connection with his general supervision of such operations." The pertinent allegations of the petition in the Lasater suit read:

### III.

Before November 9, 1977, Defendants, E.B. YALE and JAMES COLEMAN, were developing Stone Creek Plaza and constructing the business units now established thereon. General contractor for this project was the Defendant, BURT FORD, d/b/a BURT FORD ENTERPRISES and also known as BURT FORD CONSTRUCTION COMPANY. The sub-contractor doing the brick and masonry work on Stone Creek Plaza was HERMAN SMOTHERMAN, d/b/a HRD MASONRY COMPANY.

### IV.

Plaintiffs would show that the Defendants constructed or caused to be constructed an unsupported, unbraced brick wall twenty-eight (28) feet high, eight (8) inches thick immediately north of Plaintiffs' Broadway Plaza property, next to that part of Broadway Plaza leased out and occupied by Plaintiffs, BEN McFADDEN and AMERICAN NATIONAL INSURANCE COMPANY.

### V.

Plaintiffs would further show that on or about November 9, 1977, at approximately 8:30 a.m. said brick wall collapsed over and onto the roof and one wall of the wing of Broadway Plaza occupied and leased to Plaintiffs, BEN McFADDEN and AMERICAN NATIONAL INSURANCE COMPANY, resulting in the hereinafter described damages to the respective Plaintiffs.

### VI.

Plaintiffs would show that the collapse of the wall in question and the resulting damages were caused by the negligence of the Defendants in erecting or causing to be erected a 28-foot high masonry wall with no bracing or supports when they knew or should have known in the exercise of ordinary care that said practice was not safe, and in fact, was dangerous to property owners and others who may have been in and about the area. The negligence of the Defendants in constructing said masonry wall with no bracing or in failing to warn the Plaintiffs of such was a proximate cause or a proximate contributing cause of the resulting damages hereinafter alleged and but for same, said damages would not have occurred.

### VII.

As a result of said negligence of said Defendants, the Plaintiff, CECIL LASATER, sustained damages to the one-story office building in the amount of THIRTY–THREE THOUSAND, FOUR HUNDRED SEVENTY–NINE AND 78/100THS DOLLARS ($33,479.78). Said sum represents the cost of repairs made necessary by the negligence of the Defendants to put the building back into the shape that it was in before the occurrence in question. Said charges were reasonable for like or similar services rendered in the Tyler, Texas, area. In addition to damages for costs of repairs, the Plaintiff, CECIL LASATER, sustained loss of rent on the property in question during the time in which repairs were being conducted in the amount of SEVEN HUNDRED NINE AND 00/100THS DOLLARS ($709.00).

### VIII.

Plaintiffs, BEN McFADDEN and AMERICAN NATIONAL INSURANCE

COMPANY, would show that as a result of the negligence of the Defendants, they have sustained damages to the interior of the property in question consisting of damages to furniture, carpet, and drapes, which either had to be repaired or completely replaced, and costs of moving and removing in the total sum of TWO THOUSAND, FIVE HUNDRED AND 00/100THS DOLLARS ($2,500.00), for which they sue.

■ We are bound to interpret such pleadings liberally in favor of Ford and to resolve in Ford's favor any doubt as to whether such allegations state a cause of action against Ford within the coverage of United's policy. *Heyden Newport Chemical Co.*, 387 S.W.2d at 26. United claims that since the petition names Smotherman as a "subcontractor," the petition clearly alleges that the collapse of the wall resulted from the negligent acts or omissions of Smotherman as an independent contractor. This reasoning is unsound. A subcontractor is defined as "[o]ne who takes a portion of a contract from [the] principal contractor or another subcontractor" or "[o]ne who has entered into a contract ... for the performance of an act with the person who has already contracted for its performance." Black's Law Dictionary 1277 (5th ed. 1979). An independent contractor is generally defined as "one who, in exercise of an independent employment, contracts to do a piece of work *according to his own methods* and is subject to *his employer's control* only as to end product or final result of his work." Black's Law Dictionary 693 (5th ed. 1979). (Emphasis added.) Thus by definition a subcontractor may be an independent contractor or not according to his contract of employment. *See Hardware Mutual Casualty Co. v. Hilderbrandt*, 119 F.2d 291, 297 (10th Cir.1941).

We conclude that the plain and unambiguous language of the petition in the Lasater suit charges Ford himself with negligence proximately causing the plaintiffs' damages.

■ Additionally, as earlier discussed, United argues that the allegations contained in Ford's cross-action against his co-defendant Smotherman in the Lasater suit should also be considered in determining whether United had a duty to defend the Lasater suit. No authority is cited by United in support of such contention, and our research reveals none. The determination of United's duty to defend under the liability policy in question is controlled by *Heyden Newport Chemical Co.*, 387 S.W.2d at 24–25. Only the allegations made against Ford by the plaintiffs in the Lasater suit are to be considered alongside the policy exclusion provision in deciding that question.

■ Finally, United claims under its first point that the summary judgment evidence does not support the court's pretrial determination that United was liable under the policy for the damages recovered against Ford by the plaintiffs in the Lasater suit. Although United's main focus in this portion of its first point is on the issue of its duty to defend, nonetheless it argues that the summary judgment evidence does not establish as a matter of law that no material fact issues exist respecting "each ... element of [Ford's] cause of action." Citing *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970). A movant for summary judgment is entitled to an interlocutory order under the provisions of Tex.R. Civ.P. 166–A(d)[3] when he demonstrates that he is entitled to relief as to some, but not all the parties, or as to a part, but not on the whole case. As we read subdivision

---

**3.** (d) If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

(d) it expressly provides that the trial judge shall determine the scope and nature of the relief available to movant by "examing the pleadings and the evidence before it, and by interrogating counsel." The rule directs the trial court to determine "what material facts exist without substantial controversy," as well as those facts which are contested in good faith. The provisions of subdivision (d) clearly contemplate that a hearing shall be conducted on a party's motion for summary judgment on the whole case, but authorizes the court in circumstances where a summary judgment "on the whole case" is not proper, and a conventional trial is necessary as to some parties or some issues, to finally determine by an interlocutory order, what material facts are established as a matter of law and will not be further litigated at trial of the cause.[4] We interpret the phrase of subdivision (d), "what material facts exist without substantial controversy," to mean facts which are established as a matter of law by proper summary judgment evidence. The interlocutory order presented in this case made no express pretrial determination of material facts established by summary judgment proof. The order purports to adjudge that United's liability to Ford is fixed, and that a trial should follow only as to the amount of damages to which Ford is entitled. Our inquiry then is to determine by a review of the summary judgment evidence whether all necessary elements of Ford's cause of action, other than the proof of damages, are established conclusively and whether Ford was entitled to the so-called "interlocutory summary judgment" as a matter of law.

We start our analysis of this record by noting, that if the wrongful refusal of United to defend the Lasater suit against Ford operates under Texas law as a waiver by United of its policy defenses or estops United from asserting them, then we would affirm the judgment below in all respects; however, we have concluded that United's refusal to defend the Lasater suit, standing alone, does not estop United or operate as a waiver of its rights to assert the policy defense of noncoverage. We observe that according to Ford's pleading (first amended original petition) and his brief, Lasater and the other plaintiffs in the damage suit recovered a *judgment against Ford and his co-defendants in the total sum of $30,000.* The summary judgment evidence already discussed does not include that judgment or the findings upon which it was predicated. Thus the record does not disclose what facts were found and determined by the trier of the facts upon which the judgment against Ford rested. In *Gulf Insurance Co. v. Parker Products, Inc.,* 498 S.W.2d 676, 679 (Tex.1973), our Supreme Court held that where an insurer refuses to tender a defense to its insured and denies coverage on a claim made against its insured, and the insured thereafter negotiates a settlement of the claim, the insurer is entitled to raise a policy defense of exclusion of coverage set forth in the policy, but the insurer is not entitled to require compliance by its insured of conditions precedent found in the policy. *Id.* at 679. In *Womack v. Allstate Insurance Co.,* 156 Tex. 467, 296 S.W.2d 233, 236, 237 (1956), the court made a similar holding in reversing a summary judgment granted Allstate against Womack who held a judgment against Allstate's insured in an auto liability policy. The summary judgment was predicated on the failure of the insured to furnish Allstate with copies of the process and pleadings served on her in Womack's damage suit as required by the policy provisions. There the court held that Allstate's written repudiation of its policy which was delivered to its insured two days before the suit was filed by Womack against her, operated as a waiver of Allstate's rights to insist upon compliance with such policy condition. Neither *Gulf Insurance* nor *Womack* stand for the proposition that if an insurer wrongfully refuses to furnish its insured with a defense in a suit filed against it, it is estopped to assert or thereby waives the policy defense of noncoverage in a suit against the insurer

---

4. *See* 4 R. McDonald, TEXAS CIVIL PRACTICE § 17.26.3 (rev.1984).

by its insured or the insured's judgment creditor. The Fifth Circuit in a recent opinion authored by Judge Sam Johnson for a panel of that court, declared the applicable rule in Texas regarding the consequences of an insurer's breach of its duty to defend its insured in the following language:

> Having forfeited its right to conduct the defense, the insurer is bound by the settlement or judgment. . . .
>
> A consequence of breach therefore, is that an insurer who wrongfully fails to defend its insured is liable for any damages assessed against the insured up to the [amount of] policy limits, subject only to the condition that any *settlement* be reasonable. *Rhodes v. Chicago Insurance Co., a division of Interstate National Corp.,* 719 F.2d 116 (5th Cir.1983). (Emphasis added.)

The court in *Rhodes* cites in support of these pronouncements, *Ridgway v. Gulf Life Insurance Co.,* 578 F.2d 1026, 1029 (5th Cir.1978), and *Ranger Insurance Co. v. Rogers,* 530 S.W.2d 162, 167 (Tex.Civ. App.—Austin 1975, writ ref'd n.r.e.). However, from our reading of *Ridgway* and *Ranger,* we concluded that the pronouncements in *Rhodes* are overbroad. In *Ridgway,* the court in a *Per Curiam* opinion affirmed a summary judgment granted by the district court adopting as the basis of such decision the opinion of the U.S. District Court. That opinion recites the rule to be:

> The principle is well established that if a liability insurer with notice of a suit and duty to defend it fails to do so, it is bound by the judgment in that suit. *It may not re-litigate material facts issues which place that cause of action within the coverage of the policy. Maryland Casualty Co. v. Mitchell,* 322 F.2d 37 (5th Cir.1963). *Id.* 1029.

*Ridgway,* 578 F.2d at 1029. In *Maryland Casualty Co.,* 322 F.2d at 38–39, the facts show that Mitchell was injured by a fall on certain premises owned by Maryland's insured, one Mascorro, who had pushed Mitchell out of the door of the premises following an argument over rent. Mitchell sued Mascorro in state court where it was determined that Mascorro was guilty of negligence causing Mitchell's injuries. A judgment in that suit was rendered in favor of Mitchell. Maryland refused to provide Mascorro with a defense in the state court suit contending that the claim by Mitchell was not covered by its liability policy because Mitchell's injuries did not result from an accident. After securing the state court judgment, Mitchell brought an action in U.S. District Court against Maryland to satisfy the state court judgment. The U.S. District Court held in favor of Mitchell. The Fifth Circuit affirmed the district court's judgment. In so doing, that court concluded that Maryland wrongfully refused to furnish Mascorro with a defense in the state court suit and was therefore bound by the state judgment *"to the extent that the judgment involves a cause of action within the coverage of the policy." Id.* at 39.

From our examination of the Texas case law,[5] we are persuaded that certain dicta set forth in *American Fidelity & Casualty Co. v. Williams,* 34 S.W.2d 396 (Tex.Civ. App.—Amarillo 1930, writ ref'd), suggests that the rule announced in *Ridgway,* 578 F.2d at 1029, correctly states that the Texas law applicable to the case before us. *American Fidelity & Casualty Co.* is a case where the parents of a child sued American's insured for the wrongful death of that child. American advised its insured Abbott that it would defend the suit if Abbott would sign a non-waiver agreement. Abbott declined to do so, whereupon American refused to defend. A judgment was recovered by Williams against Abbott and subsequently the Williams brought suit

---

5. Including these cases not otherwise cited in the opinion: *Hardware Mut. Casualty Co. v. Schantz,* 186 F.2d 868 (5th Cir.1951); *Dairyland County Mutual Ins. v. Childress,* 650 S.W.2d 770, 772–773 (Tex.1983); *Maryland American General Insurance Co.,* 567 S.W.2d 923, 928 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.); *Mutual Fire & Auto Ins. Co. v. Green,* 235 S.W.2d 739, 743 (Tex.Civ.App.—Fort Worth 1950, no writ); and *Travelers Ins. Co. v. Reed Co.,* 135 S.W.2d 611, 618 (Tex.Civ.App.—Beaumont 1939, writ dism'd judgmt cor.).

against American to recover the amount of the judgment. The Amarillo court held that American was bound by the judgment against Abbott. This holding was predicated on an express policy provision mandated by Acts 1927, ch. 270 § 11, 1927 Tex.Gen. Laws 399, 405 (currently Tex.Rev.Civ.Stat. Ann. art. 911a, § 11 (Vernon 1964), which stated that "no defense" was available to the insurer as against "a judgment creditor of the said assured after judgment shall have been rendered against such assured upon claims for personal injury ... growing out of the actual operation of the motor buss [sic] or busses covered hereby." The court then by way of dicta stated: "We have no information as to the issues tendered therein [in the suit against Abbott] as against the company. This being the condition of the record, we cannot say that the judgment in that case [suit against Abbott] is conclusive against the company upon the issues between it and Abbott...." *American Fidelity & Casualty Co.*, 34 S.W.2d at 405.

■ To summarize, we hold that the following rules govern our decision in the case at bar, to wit:

(1) where a liability insurer wrongfully refuses to defend a suit filed against its insured, and a judgment is rendered against the insured which judgment rests on fact findings establishing the insured's liability within policy coverage, then the insurer is bound by the judgment for the damages adjudged thereby within policy limits, and for the expenses of the insured in defending the suit, including reasonable attorneys' fees and court costs. In addition, the insured or his judgment creditor in such instance is likewise entitled to recover from the insurer reasonable and necessary attorneys' fees and costs incurred in prosecuting a suit to enforce the judgment against the insurer, and

(2) if a liability insurer wrongfully refuses to defend a suit filed against its insured, and the insured compromises and settles the cause of action asserted

therein without the sanction of a judgment, then the insured may, in a separate suit instituted against the insurer for that purpose, recover judgment for the total expenses of his defense and settlement of the former suit, and, may also recover the amount of damages he paid or promised to pay in settlement of the cause of action in the former suit upon sufficient proof of facts establishing that the settlement was made in good faith, upon a reasonable basis [6] and for a reasonable amount.

■ Applying these rules of law in the instant case, we hold that the summary judgment evidence is deficient in that neither the judgment nor the verdict (if any) in the Lasater suit were alleged and proved up. We are unable to determine whether facts material to the determination of the policy exclusion issues were litigated in the Lasater suit. The court erred in issuing the interlocutory order fixing United's liability under its policy to Ford. On the other hand, treating the instant suit as one to recover for the *settlement* of the claims asserted by Lasater and the other plaintiffs in the Lasater suit, the court erred in issuing the order because the summary judgment motion and summary judgment evidence are both deficient for failure to allege and prove conclusively the facts establishing that the settlement was made in good faith upon a reasonable basis and for a reasonable amount. United's point one is sustained.

United's second point of error is without merit. United's motion for a take-nothing summary judgment was predicated solely on the ground that it had no obligation to defend Ford in the Lasater suit because the allegations of the plaintiffs' petition and Ford's cross-action in that suit considered alongside the policy exclusion for acts of an independent contractor establish as a matter of law that the claims alleged against Ford were subject to the policy exclusion. We reject this contention, and for the reasons already stated, hold that the court

6. Regarding the compromise of the claim or claims.

correctly denied United's motion for summary judgment. Point two is overruled.

The order overruling United's motion for summary judgment is therefore affirmed; otherwise, the judgment below is reversed, and the cause is remanded for further proceedings.