MARIE M. JONES, Executrix, Appellee, v. SOUTHERN SURETY COMPANY, Appellant.

No. 39764.

DECEMBER 13, 1929.

*Parrish, Cohen, Guthrie, Watters & Halloran,* for appellant.

*Carr, Cox, Evans & Riley,* for appellee.

Morling, J.—Ross V. Hawk had an undivided one-fourth interest in an estate. In the estate was a tract of 280 acres, apparently unincumbered, and 40 acres incumbered with a life  estate to Della Hawk. The land is in Dallas County. Hawk wanted Jones to buy his interest. Hawk had been under apparent guardianship, as a spendthrift. Jones told Hawk that he, Hawk, could not convey any title. Hawk said he was going to be released from the guardianship. Jones and Hawk, on September 21, 1926, signed a paper by which Hawk agreed to sell his interest in the land for $2,000, and by which Jones accepted the offer, ''upon the condition that a guaranteed title policy may be secured upon this undivided one-quarter interest.'' Jones made application to defendant for such a policy. The application was referred to defendant's examiner of titles and investigator of values, McDaniel. McDaniel examined the abstract. His attention was called to the guardianship proceedings. Hawk, with his attorney and a friend, Beyers, met with Jones and McDaniel in defendant's office in Des Moines. McDaniel asked Hawk's attorney what he knew about the guardianship. The attorney explained it at length, stating, in substance, that there was no decision as to Hawk's incompetency; that the guardianship ''was merely an arrangement whereby Hawk could not trade this property himself, and it would have to be administered through the guardian.'' McDaniel referred to ''some additional interest in this estate,—that is, a personal interest that might be coming to Mr. Hawk,''—which the attorney also explained. McDaniel then drew a deed from Hawk to Jones for his undivided

one-fourth interest, and (it having been signed by Hawk) took Hawk's acknowledgment to the deed and to an assignment to Jones of all Hawk's interest in the estate, real and personal, including rents. According to the attorney's testimony, which McDaniel seems to acknowledge to be correct, after signing the deed and assignment, Hawk asked Jones for money. Jones had a cashier's check for $2,000, which he gave to McDaniel, and which he said he didn't want to deliver until he got the policy. McDaniel said he couldn't deliver the policy until he had filed the papers and made examination of the records in Dallas County for further entries. Hawk said he was very anxious to complete the deal, because he was leaving town that evening, and going with Beyers, whose sister he was to marry, to Missouri, to operate a restaurant. It was arranged that Hawk's attorney was to accompany Jones and McDaniel to the Dallas County courthouse, "for the purpose of carrying this check over and back, and then, when the policy was issued, to deliver to Mr. Hawk." Arrangement was made with the bank to have a teller present after closing hours, to cash the check on the return of the parties from the courthouse.

"Jones told Mr. Hawk that it would take the rest of the afternoon to get back, and if he wanted to change his mind about the deal, to * * * do so upon his return; and I [Hawk's attorney] told Mr. Hawk at the time that, if * * * he would wait, * * * he would get more money out of it; but Hawk said * * * he wanted this money, * * * and that he was satisfied * * *"

The parties went to the courthouse accordingly. After McDaniel filed the deed and examined the records, the title insurance bond or policy sued on and the check were delivered. By this bond the defendant guaranteed Jones against loss not exceeding $12,000 "which assured shall sustain by reason of any defect or defects of title affecting the premises described * * * No loss or damage shall be payable hereunder except and until as ascertained in the manner and in the amount as provided in the annexed conditions and upon compliance by the assured with the stipulations of said conditions." By the conditions of the bond, Section 1, the Southern Surety Company "will at its own cost defend the assured in all actions or proceedings founded on a claim of title or incumbrance prior

in date to this bond and not excepted therein. 2. No claim shall arise under this bond except under Section 1 of these conditions and except also in the following cases: (I) Where there has been a final determination in a court of competent jurisdiction under which the assured may be dispossessed or evicted from the premises covered by the bond, or from some part or undivided share or interest therein. * * * In case any action or proceeding described in Section 1 of these conditions is commenced * * * the object and effect of which shall or may be to impugn, attack or call in question the validity of the title hereby guaranteed, as guaranteed * * * it shall be the duty of the assured to at once notify the company thereof in writing and to secure to it the right to maintain or defend such action or proceeding and to give all reasonable assistance therein and to permit it to use, at its option, the name of the assured * * * 5. Nothing contained in this bond shall be construed as a guarantee against defects or incumbrances arising after the date hereof. Defects, liens and incumbrances suffered by the assured, or for which the assured was liable or responsible at the date of the policy, are excepted from this insurance. * * * 9. Any untrue statement made by the assured or his agent affecting the subject-matter of this bond, or any suppression of any material fact, or any untrue answer by the assured or his agent to material inquiries before the issuing of the bond shall void the bond * * *''

These papers are dated October 1, 1926. At the January term, 1927, of the Dallas district court, Clarence W. Hawk, as guardian of Ross V. Hawk, incompetent, filed petition in equity against Jones, alleging that he was the guardian of the property of Ross V. Hawk, incompetent.

Paragraph 4 of this petition alleged: That, on or about the first day of October, 1926, Jones obtained a purported assignment of all of the interest of Ross V. Hawk in the real estate in question and personal property; that the assignment ''was obtained for a grossly and unconscionably inadequate price, having paid for said property $2,000, which was grossly inadequate price for said property, as the real estate alone would be worth at least ten or twelve ($10,000 or $12,000) thousand dollars, besides personal property, which would be worth at least $1,500, and that the same is without any validity, for the reason that

the said Ross V. Hawk at that time was mentally incompetent to enter into a legal and binding contract, which fact was or should have been known to the defendant at said time, and that the same is wholly void and illegal, and should be set aside.''

In the next paragraph of this petition the guardian alleged connivance and conspiracy between Jones and Beyers and Beyers's wife and false representations to wrongfully induce Hawk to part with his property. Notice of the suit was immediately communicated to the Southern Surety Company. The company wrote to Jones, calling his ''attention to the fact that if it should develop upon the trial of said cause that any defect in the title insured against under said policy is brought about by any act or conduct on the part of the assured in said policy, that the Southern Surety Company reserves the right to disclaim all liability under said policy and in appearing and defending in said cause, it waives none of its right by reason thereof and reserves to itself all defenses it now has, or may hereafter have, in connection with any purported liability growing out of the matters covered by said policy of insurance. In assuming the defense of this action, it is only under the conditions herein stated and permission is hereby given to you to employ such attorneys as you may desire to assist in the defense, but the same to be at your own expense.'' Jones referred this letter to his attorneys, who wrote defendant that there was nothing in the policy which gave defendant the right to impose conditions on making the defense. This letter stated:

''It is obvious that you may not consistently with your obligations as an insurer assume the defense of a suit and at the same time reserve the right to disclaim liability, for the simple reason that you thus place yourself in a position where your own interest is nor [or] may be antagonistic to that of the assured:—even to the extent of enabling you in this suit to establish a defense for yourself to a suit that may afterwards be brought upon the bond.''

The letter stated that Jones could not consent to the reservation, and tendered to the company the defense of the suit, as one founded upon a claim prior in date to and not excepted in the bond. To this the defendant's attorneys replied that

defendant would refuse to defend except in strict accordance with former letter.

"* * * that if any fraud or any other undue advantage was taken by Mr. Jones or exercised by him in securing title to the land or property in question, this Company was not advised of such fact, neither is it yet advised, except through the alleged claims as set forth in plaintiff's petition. * * * We will assume that Mr. Jones will employ his own attorneys and defend said case accordingly * * *''

Jones's attorneys, in a letter in response, stated that they assumed the defense, and would call upon the company to hold Jones harmless from any loss sustained from the attack on his title, and all expense of attorneys' fees. Defendant, in a following letter, asserted, without qualification, that, under the terms of the policy, considering the allegations of the petition and amendment in the cancellation suit, there was no obligation on defendant's part to defend Jones in said action, nor any liability under the terms of said policy to reimburse him for any damages. On June 21, 1927, a stipulation of settlement of the Hawk case was made, reciting the allegations of Hawk's petition of the invalidity of the deed and assignment ''because of the incompetency of the said Ross V. Hawk and fraud in connection with the execution of said instruments * * * and whereas answer has been filed expressly denying the allegations of incompetency and fraud and alleging the execution of said instruments to be free from any fraud or influence on the part of the defendant DeWitt Jones, and whereas the parties hereto have, for various reasons, concluded to compromise and settle this cause, without thereby adjudicating and without admitting by defendants the correctness of the allegations of incompetency and fraud as made in said petition, but expressly avoiding the determination thereof:

''Now, therefore, it is agreed by the parties, subject to the approval of the court:

''(1) The plaintiff shall forthwith pay to defendant DeWitt Jones the sum of $2,200 in full compromise and settlement hereof;

''(2) That the court may by its decree cancel and annul the said deed and assignment * * *''

Decree was thereupon entered in the cancellation case, reciting "that, by stipulation of the parties, this action has been compromised and settled by the agreement of Clarence W. Hawk, guardian, to pay to DeWitt Jones the sum of $2,200, settlement hereof not to operate, however, as an adjudication as to the allegations contained in plaintiff's petition; and the court expressly refrains from determining the issues therein as to fraud and incompetency, as alleged." The decree empowered the guardian to pay Jones $2,200, canceled the deed and assignment, and quieted title in Ross V. Hawk.

I. Defendant urges that the decree in the cancellation suit is *res adjudicata*; that the defect in the title is not one insured against, because the alleged ground for cancellation of  the deed was: "(1) Incompetency on the part of Hawk, known to Jones, who then paid an unconscionable price for the property. (2) Fraud on Jones's part." The stipulation and decree, so far as this point is concerned, amount to no more than a compromise of the pending suit. Nothing was adjudicated, no estoppel effected. The question whether Hawk was in fact incompetent, or was overreached or defrauded, was expressly withheld from adjudication. It was competent for the parties by agreement to withhold those questions from the adjudication. The decree is not *res adjudicata* nor an estoppel as to matters so withheld. *B., C. R. & M. R. Co. v. County of Benton*, 56 Iowa 89; *Hargrave v. City of Keokuk*, 208 Iowa 559; *Parkinson v. Fleming*, 208 Iowa 345; 34 Corpus Juris 797, 890, 896, 931.

II. Plaintiff set up breach of two of defendant's policy obligations: First, the covenant to defend at defendant's cost the action attacking his title, and, second, the guaranty against damage sustained by reason of defect in title. Defendant contends that it had the right to refuse to defend, because the grounds of recovery alleged in the cancellation suit were within the exception. Defendant urges that, in an executed transaction, mere incompetency of the grantor, not known to the grantee and not accompanied with unconscionable conduct on his part, is not ground for cancellation; that the petition in the cancellation suit was founded upon fraud; and that the action was, therefore, not one which the insurer was bound to defend.

This was not the position first taken by the defendant, which was "that, if it should develop upon the trial of said cause that any defect in the title insured against under said policy is brought about by any act or conduct on the part of the assured," defendant reserves the right to disclaim liability. Defendant did not originally disclaim liability, and did not claim that the policy did not require it to defend the cancellation suit. It impliedly admitted the contrary. Defendant argues that if, when notified of the suit, it had proceeded to defend, without reservation, it would have estopped itself from setting up, in a later action on the policy, the defense that the defect in title was not one insured against; that there were open to defendant three courses: (1) to deny liability, and leave Jones to make his own defense, (2) to concede liability, and assume the defense, (3) to undertake the defense, with reservation of its right to claim exemption from liability if a defect in the title were established, but of such character as not to be within the liability assumed by the policy.

As has been noted, the policy provides that "defects, liens and incumbrances suffered by the assured for which the assured was liable or responsible at the date of the policy are excepted  from this insurance." Defendant's assertion of non-liability because of alleged fraud was, therefore, based upon an exception "from this insurance," or on misrepresentations or concealment by the assured in obtaining the policy. The burden of allegation and proof of fraud, or that the title was within the exception, rested upon defendant. *Robinson v. Hawkeye Com. Men's Assn.*, 186 Iowa 759; *Ward v. Interstate Bus. Men's Acc. Assn.*, 185 Iowa 674; *Vernon v. Iowa State Trav. Men's Assn.*, 158 Iowa 597. It was not established in the cancellation suit, and is not pleaded or proven in this suit, that the defect in title was within the exception, or that Jones was guilty of misrepresentation or concealment in his application or in obtaining the policy. Such a state of facts, for the purpose of this case, is nonexistent. It must be assumed that the defect in the title was not within the exception, and that Jones did not make any untrue statement to the company, or suppress any material fact. Defendant guaranteed or insured Jones against loss not exceeding $12,000 from any defect (with certain exceptions)

of title affecting the premises described. As between defendant and Jones, defendant was, by virtue of this guaranty, bound to know whether or not there was a defect in the title not excepted from the policy. If a defect has been established, the defect, as has been shown, for the purpose of this case is not within the exception. It was, therefore, a defect insured against, and defendant was bound to defend the action founded upon it. Defendant refused to defend the cancellation suit. Thereby defendant necessarily waived its right, as well as violated its duty, to defend. By so violating its duty and waiving its right to defend, defendant authorized the insured to conduct the defense in good faith, and thereunder in good faith to make such a settlement as ordinary or reasonable prudence and caution might dictate to be advisable, and waived the right to demand prosecution of the action to final judgment. Settlement made by the insured in good faith, in circumstances not raising an inference of imprudence, is presumptive evidence of liability and of the amount thereof. *Fullerton v. United States Cas. Co.,* 184 Iowa 219; *Farmers Handy Wagon Co. v. Casualty Co.,* 184 Iowa 773; *Butler Bros. v. American Fid. Co.,* 120 Minn. 157 (139 N. W. 355); *St. Louis Dressed Beef & P. Co. v. Maryland Cas. Co.,* 201 U. S. 173; *Kansas City, M. & B. R. Co. v. Southern Ry. News Co.,* 151 Mo. 373 (52 S. W. 205); *Interstate Cas. Co. v. Wallins Creek Coal Co.,* 164 Ky. 778 (176 S. W. 217). The settlement is not conclusive of the good faith or reasonable prudence thereof. The question whether the settlement was made and the decree thereon entered in good faith and in the exercise of reasonable or ordinary prudence was one of fact, to be determined by the attendant circumstances. The court instructed the jury that, before Jones could recover, the burden was upon him to establish all the following propositions, namely: (1) That plaintiff made demand on defendant to defend the cancellation suit; (2) that defendant refused to defend that suit; (3) that the settlement was a reasonable one, and made in good faith; (4) that plaintiff has sustained damage in some sum. The court charged that, if plaintiff had established all these propositions, the verdict should be for plaintiff; otherwise for defendant. The court further told the jury, in effect, that the settlement must have been a reasonable one, and made in good faith, and that the term "good faith," as used in the instructions, meant the

exercise of that caution and diligence which an honest man of ordinary prudence would exercise under the same or similar circumstances. The verdict in favor of the plaintiff, therefore, establishes that the settlement was made in good faith and in the exercise of ordinary caution and prudence. It follows that the decree in the cancellation suit establishes the fact that the title was defective. As the decree in that suit does not, of its own virtue, establish that the defect on which it proceeded was within the exception, and as defendant has not pleaded or proved that the defect is one excepted from the policy, and has not pleaded or proved misrepresentation, concealment, or fraud, the defect, on this record, must be held to be one insured against. It must be held, therefore, that defendant broke its covenant to defend, and subjected itself to liability for the reasonable value of the services of attorneys reasonably performed in the conduct of the defense. Defendant might, as it now argues, choose to defend or not to defend; but its choice not to defend would not relieve it of its contract liability to defend or of its contract liability for defect of title insured against. On this record, Jones was within his rights in demanding that defendant defend the cancellation suit as one founded on a claim against which defendant agreed to defend. While defendant offered Jones permission to employ attorneys to assist in the defense, it did not offer to make the defense against the alleged ground of liability for which it was responsible and to leave to Jones the defense against asserted ground of liability for which it was not responsible. In its last letter, defendant said that there was no obligation to defend, ''nor any liability under the terms of such policy to reimburse him [Jones] for any damages or alleged damages he may suffer or sustain in connection with or as the result of said suit.'' If defendant had offered to defend against alleged defects for which it was liable, and had left to Jones the defense for alleged defects excepted from the policy, instead of peremptorily denying liability and refusing to defend, it may be that it would thereby have adopted a proper course of procedure. See *Fidelity & Cas. Co. v. Stewart Dry Goods Co.*, 208 Ky. 429 (271 S. W. 444). But as the case stands here, there was a defect in the title for which defendant was responsible, and against which it unjustifiably refused to defend.

Defendant objects that the attorneys' fees which the plain-

tiff incurred in making the defense and the right to recover which was submitted to the jury are not shown to have been paid. The attorneys' fees incurred, however, were a part of plaintiff's damage for defendant's breach of contract. Under the contract, defendant agreed to defend, and thereby save plaintiff the cost of defending; not merely to indemnify plaintiff against liability for attorneys' fees. Defendant became liable for the attorneys' fees as a part of plaintiff's damage, and it was not necessary to show that they had been paid. 17 Corpus Juris 811. Defendant is, therefore, liable to pay the damages on account of the defect in title, and the attorneys' fees as damages for refusal to defend.

Defendant contends that there is no competent evidence of the value of the Dallas County land. Objections were made to the testimony on the subject of values, and while assigned as error, are not argued. The evidence must be regarded as properly in the record. A witness testified that the value of the 280 acres not incumbered by life estate was $175 per acre, and that the value of the 40 acres incumbered by the life estate was $7,600. It was for the jury to determine what weight should be given to this evidence.

It is also argued that the amount testified to as the value of the attorneys' services included services performed before the breach of the covenant to defend. The member of the firm of plaintiff's attorneys who testified to such value stated, in direct examination, that the reasonable value of his services as attorney in the defense of Jones in the cancellation suit was $750. On cross-examination, he testified to the time that he spent, and that:

"In addition to that, there was—I know it included a half day of Mr. Evans' time charged, conference with Southern Surety Company, preliminary to the correspondence that has been offered here, following your letter of December thirtieth. Q. The service of Mr. Evans that you refer to, included in the estimate of value of services rendered to Mr. Jones, that you have set at $750? A. Yes."

Defendant then moved to strike the testimony, for the rea-

72

son that it appeared that the estimate was based upon and included services for which the Southern Surety Company could not be liable. This testimony on cross-examination is too ambiguous and indefinite to require the court to strike out all the evidence of the witness upon the value of the services. The ruling was within the proper discretion of the court.

Defendant argues that the instruction was erroneous by which the court told the jury that "good faith," as the term was used in the instructions, meant the exercise of that caution and diligence which an honest man of ordinary prudence would exercise under the same or similar circumstances. We are of the opinion that the defendant has no cause for complaint of this instruction.

Assignments of error not argued are not considered.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, KINDIG, and WAGNER, JJ., concur.

EVANS, J., not participating.