J. D'AMICO, INC. *vs.* CITY OF BOSTON & others.[1]

Suffolk.    November 5, 1962. — December 7, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Insurance,* General liability insurance, Property damage insurance, Con-
struction of policy, Contractor's insurance, Defence of proceeding
against insured. *Equity Pleading and Practice,* Declaratory proceed-
ing. *Words,* "Accident."

If a contractor hired by a municipality to widen and surface a highway
trespassed by mistake on land outside the limits of the highway and
there excavated material and cut down trees, the damage to the land
would be "caused by accident" within a property damage liability insur-
ance policy covering the contractor against liability for damage arising
out of his operations and "caused by accident."   [221, 224]
Construing certain provisions of a highway contractor's property damage
liability insurance policy in the light of the principle that ambiguities
should be resolved in favor of the insured, coverage afforded for
"Street . . . Surfacing" included "clearing of right of way" and "ex-
cavation."   [224–225]
The provision of G. L. c. 175, § 47, Sixth (*b*), forbidding property damage
liability insurance covering damage caused by the "deliberate or inten-
tional crime or wrongdoing" of the insured did not preclude coverage
of a highway contractor, engaged by a city to widen and surface a
street, for damage to land outside the street limits resulting from his
trespassing on the land by mistake and there excavating material and
cutting down trees.   [225–226]
In a suit in equity for declaratory relief by the insured under a property
damage liability insurance policy against the insurer and a claimant
who had brought an action at law, still pending untried, against the in-
sured, where the policy required the insurer to defend at its expense
any proceeding against the insured "alleging" damage covered by the
policy, "even if . . . groundless," and it appeared that the allegations
in the declaration in the action at law were broad enough to present a
claim within the coverage of the policy, although the record before this
court in the suit did not permit a determination whether in fact the
claim was within the coverage, this court ordered the entry of a decree
declaring the obligation of the insurer to defend the action at law and
authorized the trial court in its discretion to adopt certain further pro-
cedures appropriate to resolution of the issues among the parties.
[226–227]

---

[1] The other defendants are Harold R. Pfeffer and Mary L. Pfeffer and Gen-
eral Accident Fire and Life Assurance Corporation, Ltd.

J. D'Amico, Inc. *v*. Boston.

BILL IN EQUITY filed in the Superior Court on March 28, 1960.

The suit was heard by *O'Connell, J.*

*Philander S. Ratzkoff* for the defendant General Accident Fire and Life Assurance Corporation, Ltd.

*Francis V. Matera* for the plaintiff.

*Thomas P. Russell (Gilbert F. Dillon* with him) for the defendants Harold R. Pfeffer & another.

CUTTER, J.   The plaintiff (D'Amico) seeks a declaration that the defendant General Accident Fire and Life Assurance Corporation, Ltd. (General) is bound under an insurance policy issued by it to defend D'Amico against claims of two defendants named Pfeffer, asserted by them (as plaintiffs) in an action in the Superior Court (Suffolk, Law No. 531,446).   The case was heard in the Superior Court upon a statement of "all the facts material to the issues." The trial judge concluded that the insurance policy covered "the damages claimed by the . . . Pfeffers" and that General is bound to defend D'Amico in the Superior Court action.   A final decree made declarations in accordance with these conclusions.   General appealed.

On August 6, 1957, D'Amico made a contract with the city of Boston "for the widening and paving of" Burley Street.   In October, 1957, D'Amico's employees started work "as directed by the engineer . . . for the [c]ity . . . [who] established the side line on Burley Street and set stakes for D'Amico to follow."   D'Amico then "excavated to the line . . . set by the engineer in accordance with the line of taking by eminent domain, leaving a vertical wall of earth varying in height from . . . [zero] to . . . [six] feet above . . . the street adjoining the property of the Pfeffers [who owned two lots on Burley Street].   There were three large trees near the excavation located on the Pfeffer land . . . .   Due to the . . . excavation along the line established by the engineer's stakes . . . roots of the trees . . . were uncovered.   The [c]ity engineer determined that . . . the trees and the vertical wall . . . [were] unsafe and . . . re-stake[d] another line northerly of the original line and

ordered D'Amico's employees to cut the vertical bank back at 45° and to remove the trees.   It is disputed whether . . . D'Amico had knowledge that the restaked area was outside the eminent domain taking and whether ... [the] Pfeffers gave permission to the [c]ity of Boston to enter upon the restaked area.   D'Amico . . . [cut] back the bank . . . [and cut] down the trees on the Pfeffers' land . . . . [D'Amico's] work . . . under the contract was . . . accepted and D'Amico was paid by the [c]ity . . . for this work in accordance with the unit price established under its contract . . . ."

About one year later D'Amico and the city were made defendants in the action at law, mentioned above, in which the Pfeffers claim "damages caused by the alleged unlawful entry upon their land and the wrongful cutting down and carrying away of three trees and excavating and carrying away . . . earth and fill."   Count 2 of the declaration in this action seeks treble damages under G. L. c. 242, § 7.[2]

General "had issued a policy of insurance known as a Manufacturer's and Contractor's Schedule Liability Policy to . . . D'Amico."[3]   On November 27, 1958, General "wrote a so-called 'reservation of rights' letter to D'Amico in which it proffered to defend the case subject to its right to disclaim later . . . .   D'Amico did not object to this arrangement. . . .   [O]n December 23, 1959, counsel for General . . . advised D'Amico's . . . counsel . . . that coverage was being disclaimed . . . and that General . . . was going to withdraw . . . ."   Thereafter D'Amico's own

---

[2] Section 7 provides that a person "who without license wilfully cuts down . . . trees . . . on the land of another shall be liable to the owner in tort for three times the amount of the damages assessed therefor; but if it is found that the defendant had good reason to believe that the land on which the trespass was committed was his own or that he was otherwise lawfully authorized to do the acts complained of, he shall be liable for single damages only."

[3] The contract between D'Amico and the city required D'Amico to maintain during the life of the "contract such . . . [p]roperty [d]amage [i]nsurance as shall protect . . . [it] from claims for property damage, which may arise from operations under this contract . . . and the amount . . . shall be . . . not less than ten thousand . . . dollars for damage on account of any one accident and . . . not less than twenty thousand . . . dollars for damages on account of all accidents."

counsel entered his appearance.    The law action has not been tried.

The policy provided insurance "only with respect to . . . so many . . . coverages . . . as are indicated by specific premium . . . charges."   Under coverage "B.  Property Damage Liability" in division "1.  Premises-Operations" was shown a premium.   The description of hazards under "1.  Premises-Operations" said merely, "See Schedule Attached."   General agreed under coverage "B.  Property Damage Liability" that it would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to . . . property . . . *caused by accident* and arising out of the hazards hereinafter defined" (emphasis supplied).   Division "1. Premises-Operations" was defined as "[t]he . . . use of premises, and all operations."[4]   Under the heading, "II Defense, Settlement, Supplementary Payments," it was provided, "With respect to such insurance as is afforded . . . for property damage liability, the company shall:  (a) defend any suit against the insured alleging such injury . . . and seeking damages on account thereof, even if such suit is groundless . . . .   (b) . . . (2) pay all expenses incurred by the company, all costs . . . in any such suit and all interest on the entire . . . judgment," subject to limitations not here relevant.

1.   General contends that "even if D'Amico committed the trespass under a mistake," the injury to the Pfeffers' property was not "caused by accident" and that consequently, it did not arise "out of hazards . . . defined" in the policy.   "Accident," as used in a somewhat comparable

[4] In an "Extension Schedule (Contractors)" separate premiums were shown against the following items, among others:  #23.  Street or Road Paving or . . . Surfacing . . . (clearing of right of way, earth or rock excavation, filling or grading . . . to be separately rated).   24.  Contractors — construction or erection — executive supervisors exercising supervision through superintendents and foremen — no direct supervision."   Among "conditions" of the policy (see fn. 6, *infra*) was item 3 (c), "Assault and Battery.   Under coverages A and B, assault and battery shall be deemed an accident unless committed by or at the direction of the insured."   Condition 1 of the policy describes the "advance premium stated in the declarations . . . [as] an estimated premium only" and provides that "[u]pon termination of this policy, the earned premium shall be computed in accordance with the company's rules."

policy, has been said to be "a more comprehensive term than negligence, and in its common signification . . . [to mean] an unexpected happening without intention or design." See *Sheehan* v. *Goriansky*, 321 Mass. 200, 205, holding that liability arising out of wanton or reckless conduct, as opposed to wilful or intentional conduct, was within the "guest" coverage of a motor vehicle liability policy insuring against "liability . . . because of bodily injury . . . caused by accident." In *New England Gas & Elec. Assn.* v. *Ocean Acc. & Guar. Corp.* 330 Mass. 640, 643, 650-657, the "event insured against was the sudden and accidental deforming . . . of . . . [a] turbine," which seems to have been brought about by the missetting of certain springs about one year before the injury. This court said (pp. 651-653), "The coverage was not limited to accidental means as distinguished from accidental results . . . . Although the setting of the springs was done voluntarily and knowingly by those who set them, they did not do so with any deliberate purpose or intent to damage the turbine. . . . The term accident . . . should be given its ordinary meaning as denoting an unexpected, undesigned, and unintended happening or a mishap and as including an event which, according to the common understanding of people in general, would rightly be considered as an accident." Recovery was allowed. See *Dow* v. *United States Fid. & Guar. Co.* 297 Mass. 34, 38, where the insured's death from burns was caused by immersion in a bathtub of scalding water. "Doubtless the insured intended to turn on the water and . . . to get into the tub, but it is . . . highly improbable that he intended to immerse himself in scalding water. . . . [T]he jury could well find that the scalding resulted from unusual or unexpected heat in the water or from some slip, mistake or false judgment . . . as to the physical factors" and hence that it was accidental.

*Haynes* v. *American Cas. Co.* 228 Md. 394, arose under policy provisions closely similar to those in the present case. During excavation work a contractor pointed out the property line within which work was to be done. His em-

ployees by mistake encroached upon adjacent property and cut down forty-eight trees. In the circumstances the damage was held to have been "caused by accident." Despite the fact that the physical acts were intentional and voluntary, they were viewed as causing damage unforeseen by the actor and hence within the insurance coverage. A somewhat comparable case is *Cross* v. *Zurich Gen. Acc. & Liab. Ins. Co.* 184 F. 2d 609, 610–611 (7th Cir.). There damage was held to have been "caused by accidents," where the insured's employees intentionally used acid in a solution for washing windows in a strength which caused unintended damage, in part at least because of insufficient precautions.[5] Cf. *Thomason* v. *United States Fid. & Guar. Co.* 248 F. 2d 417, 419 (5th Cir.), but see Judge Rives's dissent at pp. 419–421.

General places some reliance on cases holding that certain policies do not cover an insured for a deliberate and intentional assault upon another person. See *Sontag* v. *Galer*, 279 Mass. 309, 313; *Bowen* v. *Lloyds Underwriters*, 339 Mass. 627, 629. In the *Sontag* case, this court said, "We do not adopt the contention . . . that an injury is accidentally sustained merely because it may be accidental from the plaintiff's standpoint. It is the state of the 'will of the person by whose agency . . . [the injury] was caused' rather than that of the injured person which determines whether an injury was accidental. . . . [A]n injury caused by the *wilful and deliberate* act of the insured . . . is one for which the . . . company would not be liable . . . under the policy. The policy does not purport to protect

---

[5] Other cases dealing with what constitutes an "accident" are *Minkov* v. *Reliance Ins. Co.* 54 N. J. Super. 509, 512–515, *O'Rourke* v. *New Amsterdam Cas. Co.* 68 N. M. 409, 412–417, *Rex Roofing Co. Inc.* v. *Lumber Mut. Cas. Ins. Co.* 280 App. Div. (N. Y.) 665, 667, *Wolk* v. *Royal Indem. Co.* 27 Misc. 2d (N. Y.) 478. See *Knight* v. *L. H. Bossier, Inc.* 118 So. 2d 700, 702–703 (La. Ct. App.); *Messersmith* v. *American Fid. Co.* 232 N. Y. 161, 165–166; *Johnson Corp.* v. *Indemnity Ins. Co.* 7 N. Y. 2d 222, 227–229; Appleman, Insurance Law and Practice, § 4492. See also *Jernigan* v. *Allstate Ins. Co.* 269 F. 2d 353, 355–357 (5th Cir.); *Moore* v. *Fidelity & Cas. Co.* 140 Cal. App. 2d 967, 970–972. Cf. *C. Y. Thomason Co.* v. *Lumbermens Mut. Cas. Co.* 183 F. 2d 729, 732–733 (4th Cir.); *United Pac. Ins. Co.* v. *Schaecher*, 167 F. Supp. 506, 508–509 (N. D. Cal.); *Langford Elec. Co. Inc.* v. *Employers Mut. Indem. Corp.* 210 Minn. 289, 295–298.

the insured from her own *intentional and malicious acts*"
(emphasis supplied).

The assault cases do not require us[6] to treat D'Amico's
trespass as "intentional and malicious." No fact agreed
would warrant the conclusion that the trespass occurred
with malice or intent to injure another. It could be in-
ferred from the agreed facts that it was based on a mishap
or mistake of a type which in the words of the *New England
Gas & Elec. Assn.* case (330 Mass. 640, 653) "according to
the common understanding . . . would rightly be consid-
ered as an accident."

The authorities just cited lead us to the conclusion that
trespass by D'Amico by mistake, or without actual intent to
invade property upon which it knew it was not entitled to
carry on work under its contract, would be "caused by acci-
dent" within the policy. The declaration in the law action
was broad enough (see *Berke Moore Co. Inc.* v. *Lumber-
mens Mut. Cas. Co.*, ante, 66, 70; cf. *Fessenden Sch. Inc.*
v. *American Mut. Liab. Ins. Co.* 289 Mass. 124, 127–130;
*Stout* v. *Grain Dealers Mut. Ins. Co.* 307 F. 2d 521, 524–525
[4th Cir.]) to permit the Pfeffers to recover for such a tres-
pass. Accordingly, we hold that it was General's duty
under the policy to defend D'Amico.

In reaching this conclusion we are aided by the principle
that doubts about ambiguous insurance policy provisions
are to be resolved against the insurance company. See
*Schroeder* v. *Federal Ins. Co.* 343 Mass. 472, 475. *Joseph
E. Bennett Co. Inc.* v. *Fireman's Fund Ins. Co.* 344 Mass.
99, 103. It was open to General by explicit provision to

---

[6] We give no weight, in interpreting the term "caused by accident," to
§ 3 (c) of the policy (see fn. 4, *supra*) providing that "assault and battery"
under coverage B shall be deemed an accident in certain circumstances. This
provision was probably designed to avoid the principle of cases like the *Sontag*
case, 279 Mass. 309. The reasons for the insurer's failure to make a similar
explicit provision with respect to claims based on the different tort of trespass
are wholly obscure. Trespass may occur from an intrusion by mistake (see
Restatement: Torts, § 164; Prosser, Torts [2d ed.] § 17) even if it results
from a voluntary act. See *United Elec. Light Co.* v. *Deliso Constr. Co.* 315
Mass. 313, 318. Cf. *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603, 612–613.
Such a trespass by mistake is distinguishable in quality from an intentional
assault. Consequently, the presence of an explicit provision as to the latter
and the absence of one as to the former does not seem to us of substantial
significance.

have excluded liability for trespass by mistake, although some question might then have arisen whether the policy, with such an exclusion, would have satisfied the requirements of the city contract (see fn. 3, *supra*). The same principle of interpretation leads us to conclude that "clearing of right of way . . . [and] excavation" was not excluded from the coverage under item 23 of the extension schedule. Such work, we conclude, was comprised in the coverage for "street . . . surfacing." The highly ambiguous parenthetical matter in item 23 (see fn. 4, *supra*) we view as merely stating that a separate rate was to be charged for these operations if such operations were to be undertaken in connection with street surfacing. See *Crook* v. *Kalamazoo Sales & Serv. Inc.* 82 R. I. 387, 394. Cf. *Clauss* v. *American Auto. & Ins. Co.* 175 F. Supp. 641, 643–644 (E. D. Pa.). The circumstance (see fn. 4, *supra*), that the policy provided that the premiums shown on the declarations were to be "estimated" premiums only, lends support to our conclusion. This provision suggests that, if the work of street paving turned out unexpectedly to involve excavation, upon audit of the policy after the work was done, it would be open to General then to charge the correct premium, if it had not originally been charged. If it had been General's intention to exclude excavation and clearing of right of way from the coverage, Item # 23, "Street or Road Paving," that should have been clearly expressed as an exclusion from coverage. See *MacArthur* v. *Massachusetts Hosp. Serv. Inc.* 343 Mass. 670, 672.

2. General asserts that G. L. c. 175, § 47, Sixth (b), as amended through St. 1945, c. 436, and St. 1951, c. 73,[7] prohibits the coverage for which D'Amico contends. Although (see *Everett* v. *Canton,* 303 Mass. 166, 169) a trespasser is a

[7] Section 47 provides in part, "Companies may be incorporated . . . for the following purposes: — . . . Sixth, To insure . . . (b) any person against legal liability for loss or damage . . . on account of any damage to property of another, except that no company may insure any person against legal liability for causing injury . . . by his deliberate or intentional crime or wrongdoing, nor insure his employer or principal if such acts are committed under the direction of his employer or principal . . . ." See also G. L. c. 175, § 150 (as amended through St. 1946, c. 250).

"wrongdoer," we see in cl. Sixth no sufficient indication of any legislative intention that insurance companies shall not insure against property damage arising from trespass by mistake. Such a trespass is not within the statutory language, "deliberate or intentional crime or wrongdoing."

3. General asserts that in any event it is not bound to defend or indemnify D'Amico against liability for treble damages under G. L. c. 242, § 7 (see fn. 2, *supra*). As already indicated, General is bound to defend D'Amico against the Pfeffers' claims under this section because their declaration in the law action asserts claims which may be found to have been "caused by accident." Of course, upon trial of the law action, it may be established that D'Amico (a) knew that the city was not authorized to disturb the Pfeffers' land and trees, and (b) proceeded to carry out the city engineer's instructions in wilful disregard of that knowledge. Cf. *Moskow* v. *Smith,* 318 Mass. 76, 78–79. It would then be open to General to contend that it has no obligation to indemnify D'Amico against the Pfeffers' claims. Because this record does not show the extent of D'Amico's knowledge, the trial judge was not, and we are not, in a position to declare the extent of General's obligation to indemnify D'Amico.[8] The final decree thus is too broad in declaring that General's policy "cover[s] the damages claimed by the . . . Pfeffers up to the limits of the insurance."

4. The final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion. A new final decree is to be entered declaring (a) that General's policy affords coverage to D'Amico for the property damage caused by any trespass upon the Pfeffers' land committed by D'Amico by mistake and without design to cause tortious injury to the Pfeffers, and (b) that no determination can appropriately be made

---

[8] We refrain, in the absence of more nearly complete facts, from deciding whether circumstances may exist in which treble damages under § 7 could be recovered from D'Amico and in which it still could be found that the injury was caused by accident. Cf. *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.* v. *Thornton,* 244 F. 2d 823, 827 (4th Cir.).

on this record of the extent of General's obligation to indemnify D'Amico against liability for property damage inflicted by D'Amico if it shall be shown that D'Amico had knowledge (1) that the restaked area was outside the eminent domain taking and (2) that the Pfeffers had not given the city permission to enter upon the restaked area. The new final decree shall embody the substance of par. 2 of the final decree here reviewed (declaring General's obligation to defend D'Amico in the law action). In the discretion of the Superior Court, (a) entry of a final decree after rescript may await the final determination of the issues in the law action or may be delayed until the issues in that action have been determined in further hearings in this proceeding (see G. L. c. 231A, § 1, inserted by St. 1945, c. 582, § 1), or (b) in the final decree the Superior Court may retain jurisdiction to resolve any issues left open between General and D'Amico after disposition of the law action. In any event a suitable decree may be entered in the Superior Court to provide for the representation of D'Amico at General's expense (in connection with the determination of the issues raised in the law action) by counsel independent of General (see *Newcomb* v. *Meiss,* 263 Minn. 315, 322; cf. *Stout* v. *Grain Dealers Mut. Ins. Co.* 307 F. 2d 521, 523–525 [4th Cir.]) and for the payment by General of any expenses heretofore or hereafter caused to D'Amico by General's refusal to comply with its obligation to defend D'Amico. D'Amico is to have costs of this appeal. Costs in the Superior Court are to be in the discretion of that court.

*So ordered.*