**Coy McAllister, d/b/a Coy McAllister Excavating Co., Plaintiff-Appellee, v. Hawkeye-Security Insurance Company, a Corporation, Defendant-Appellant.**

**Gen. No. 65–109.**

Second District.

April 5, 1966.

Williams, McCarthy, Kinley & Rudy, of Rockford, for appellant.

Reno, Zahm, Folgate & Skolrood, and Stuart B. Nordquist, all of Rockford, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The issue involved in this appeal is the construction of the liability insurance policy issued by defendant-appellant to plaintiff-appellee with reference to the meaning

of the word "accident" as used therein. The word is not defined in the policy.

The pertinent facts of the case are undisputed. The plaintiff is in the excavating business. Grover Porter, the highway commissioner for Roscoe Township, engaged him to carry out earth moving activities incident to the repair of Pleasant Valley Road. Plaintiff was instructed to commence such work at the intersection of Pleasant Valley and Manchester Roads, permission having been obtained from the abutting property owner for the plaintiff to enter upon said property at this point.

In the course of his operations, the plaintiff mistakenly started the road work on the premises of Addison B. Foss, located at the intersection of Pleasant Valley and Prairie Hill Roads—a quarter of a mile south of where he had been instructed to work. Plaintiff performed certain earth moving activities there, believing that he was on the premises where the highway commissioner had directed him to work.

Foss thereupon filed suit against Porter, the highway commissioner, in Cause No. 80038, seeking damages for the trespass upon his land. Porter filed a third-party complaint in said action against the plaintiff herein, seeking reimbursement for any damages which he might be required to pay to Foss, contending that plaintiff was primarily responsible for the damage.

Prior to the date of this occurrence, the defendant issued its comprehensive liability policy to plaintiff, which was in effect at the time, whereby it agreed to pay on behalf of the insured, "all sums which the insured shall be legally obliged to pay as damages because of injury to or destruction of property, . . . caused by accident and arising out of the ownership, maintenance or use" of plaintiff's equipment, and to furnish a defense in any suit instituted to recover damages.

The plaintiff tendered the defense of the third-party action to the defendant, which, after investigation, the defendant refused, and stated that the policy did not cover the type of occurrence in question because it was not an accident.

Upon trial, a judgment was entered in favor of Foss and against Porter for $1,910.55, and in the third-party action, judgment was entered in favor of Porter and against the plaintiff herein, in the same amount.

Thereafter, plaintiff filed a declaratory judgment suit against the defendant seeking a judicial declaration that defendant was obligated to reimburse the plaintiff for the amount of the Porter third-party judgment. The trial court so held, entered judgment in favor of the plaintiff and against the defendant for $1,910.55 plus costs, and the defendant has appealed.

The defendant contends that the damage to Foss' property, resulting from the plaintiff having mistakenly carried out certain earth moving activities thereon, was not caused by accident, as required under the liability policy; that, therefore, there is no obligation on the part of the defendant to reimburse the plaintiff for the judgment rendered against him in the third-party suit; and that the judgment against the defendant herein should be reversed.

The plaintiff urges that the damage caused by his trespass by mistake onto Foss' land was "caused by accident" within the terms of the defendant's liability policy issued to him; and that since the Foss complaint and third-party complaint potentially stated a cause of action against the plaintiff within the coverage of the policy, defendant's denial of liability and refusal to accept the defense of the case, estopped it from asserting any defense as to payment on the ground of noncoverage.

██ If an ambiguity or uncertainty results from language used in an insurance policy, it is a basic rule of construction that all uncertainty should be resolved in

favor of the insured. Iowa Nat. Mut. Ins. Co. v. Fidelity & Cas. Co. of New York, 62 Ill App2d 297, 303, 210 NE 2d 622 (2nd Dist 1965) ; Caster v. Motors Ins. Corp., 28 Ill App2d 363, 366, 171 NE2d 425 (4th Dist 1961).

Defendant contends that plaintiff intended to operate his equipment and to perform earth moving activities; that he did what he intended to do; that his acts were deliberate, voluntary and intentional; that there was nothing unforeseen or unexpected about the thing done; and that the occurrence in question was not an accident and there was no liability under the rationale of Farmers Elevator Mut. Ins. Co. v. Burch, 38 Ill App2d 249, 187 NE2d 12 (4th Dist 1962). Defendant stresses the language at page 252 and 253, to wit:

> "The policy covered only damages caused by accident. While the word 'accident' does not have a settled legal signification, its generally accepted meaning is the same as the popular understanding or approved usage of the word implies.
>
> " 'Accident' normally designates an unforeseen occurrence, usually of an untoward or disastrous character, or an undesigned sudden or unexpected event of an inflictive or unfortunate character (Neale Const. Co. v. United States Fidelity & Guar. Co., 199 F2d 591, 592; Yates v. Bankers Life & Cas. Co., 415 Ill 16, 19, 111 NE2d 516). The natural and ordinary consequences of an act do not constitute an 'accident.' "

In Burch, a lawsuit had been filed against the insured—the elevator company—charging that it maintained a nuisance in the operation of its elevator and had permitted dust from grain etc., to enter plaintiff's premises causing damage thereto; and that the insured operated machinery which vibrated to the extent that it caused damage to his home. Thereafter, the insurer filed a declaratory judgment action seeking determination as to policy lia-

bility. Upon appeal in said action, the Appellate Court found that the occurrence, as delineated in the pleadings, was not an accident.

While recognizing that there are cases holding certain factual situations to be accidental, defendant endeavors to distinguish between those cases and the case at bar. It cites as an example, Yates v. Bankers Life & Cas. Co., 415 Ill 16, 111 NE2d 516 (1953), a case in which the insured, Yates, intruded into the home of Richardson, who, without intent to injure Yates, pushed him out the front door and onto the front porch. The push, however, caused Yates to fall and the fall resulted in a fatal injury. The Supreme Court held that the injuries and death of Yates were caused by something unforeseen and unexpected occurring in the course of an intentional act; and that the jury could properly have found that Yates' death was caused by "accidental means," as defined in the policy issued on Yates' life. "Accidental means" is defined in Yates in these words, at pages 19 and 20:

> "In Christ v. Pacific Mutual Life Ins. Co. the court reviewed the definitions and applications of the term 'accident' in cases involving recovery under insurance policies, and adopted the interpretation of the United States Supreme Court in United States Mutual Accident Assn. v. Barry, 131 US 100. Under the rule promulgated in the Barry case, if an act is performed with the intention of accomplishing a certain result, and if, in the attempt to accomplish that result, another result, unintended and unexpected, and not the rational and probable consequence of the intended act, in fact, occurs, such unintended result is deemed to be caused by accidental means.
>
> "In the Barry case, the insured, along with two companions, jumped from a platform 4 or 5 feet high, and in alighting unexpectedly wrenched his body by a jar which cause a stricture of the duo-

226

denum, resulting in his death a few days later. In adjudging that decedent had sustained an accident, the court stated: 'The two companions of the deceased jumped from the same platform at the same time and place and alighted safely. It must be presumed not only that the deceased intended to alight safely, but thought that he would.' "

The defendant argues that in Yates, Richardson intended to push Yates the insured, but not to harm him, and that the insured's fall and fatal injury were occasioned by an accident; while in the case at bar, plaintiff intended to drive his equipment and intended to do damage to the land, and that the damage caused by such deliberate and intentional acts, was not caused by an accident.

However, we believe that under the definition of an "accident" in Yates, it can fairly be said that plaintiff intended to assist in making an authorized improvement to a highway and abutting lands, but through mistake, illegally entered upon Foss' property and moved earth there which damaged that property. While the plaintiff intended to move earth, he intended to do so incident to repairing the highway and he did not intend to do so on Foss' land, thereby causing damage to it. The damage was not the rational and probable consequence of plaintiff's intended act—it was rather something unforeseen and unexpected occurring in the course of an intentional act.

■■■ Other Illinois courts have liberally construed policies of insurance providing for the payment of benefits caused by "accidental means." In Taylor v. John Hancock Mut. Life Ins. Co., 11 Ill2d 227, 142 NE2d 5 (1957), at page 230, the court stated:

"In effect, 'accidental means' has been held to be synonymous with 'accidental result,' and defined as something which happens by chance or fortuitous-

ly, without intention or design, and which is unexpected, unusual and unforeseen. (See, e. g., Yates v. Bankers Life and Casualty Co. 415 Ill 16; Rodgers v. Reserve Life Ins. Co. 8 Ill App2d 551.) While it is true the parties intended to burn the house, they obviously did not intend the fire to start when it did. To this extent it was 'accidental' as the term has heretofore been interpreted."

In Rodgers v. Reserve Life Ins. Co., 8 Ill App2d 542, 132 NE2d 26 (2nd Dist 1956), Rodgers consciously incurred a known hazard in attempting to negotiate a curve in the highway at a high rate of speed and was killed. He clearly failed to exercise judgment, was careless, reckless and perhaps, foolhardy. The court held that Rodgers' death was not the rational, natural and probable result of his intentional acts, but rather, was accidental within the meaning of the liability policy.

In Smith v. Moran, 61 Ill App2d 157, 209 NE2d 18 (2nd Dist 1965), the insured aimed a gun at one person but shot and injured another. The party inflicting the injury had an insurance policy which excluded from coverage, injury caused intentionally by the insured. On appeal, it was argued that the act of the insured was intentional and, therefore, not covered by the policy. At page 163, we stated:

"We are of the opinion that the injury to the plaintiff was not intentionally caused by the defendant, but was an unintentional result of an intended act directed at Dolores Nelson."

In the case at bar, we likewise believe that the damage to the Foss land was not intentionally caused by the plaintiff, but rather, was the unintentional result of an intended act directed at other property. Since there was not intent to damage Foss' land, the resulting harm was "caused by accident."

228

■ In the light of the foregoing liberal construction given by Illinois courts to insurance policies with reference to the meaning of the word "accident" and similar terms as used therein, as well as the force of cases from other jurisdictions which specifically hold that trespass by mistake is an "accident" under a policy provision similar to that in the case at bar (Haynes v. American Cas. Co., 228 Md 394, 179 A2d 900 (1962); J. D'Amico, Inc. v. City of Boston, 345 Mass 218, 186 NE2d 716 (1962)), we conclude that injury to property arising out of such trespass is caused by an "accident" under the policy provision in question. We affirm the trial court on this theory and have no occasion to consider the alternate theory of estoppel which was advanced by plaintiff as a further basis for the affirmation of the trial court judgment.

Accordingly, the judgment of the trial Court is affirmed.

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.