**ARGONAUT SOUTHWEST INSURANCE COMPANY, Appellant,**

v.

**Louise K. MAUPIN et al., d/b/a Maupin Construction Company, Appellees.**

No. 11937.

Court of Civil Appeals of Texas, Austin.

July 26, 1972.

Rehearing Denied Oct. 4, 1972.

L. W. Anderson, Dallas, for appellant.

Huson, Clark & Thornton, Robert B. Thornton, Kampmann, Church & Burns, Harry J. Burns, San Antonio, for appellees.

PHILLIPS, Chief Justice.

Appellees entered into a contract with the State of Texas to make certain improvements to a state highway in Travis County. The contract required plaintiffs to obtain and furnish "borrow" material for the highway. "Borrow" is evidently dirt, rock or gravel or "fill."

Consequently, one of the Appellees entered into an agreement to purchase "borrow" material from Fred J. Kipper of Austin. Pursuant to this agreement, Appellees removed 5,744 cubic yards of "borrow" material from property occupied by Kipper.

After completing all excavation operations, Appellees were notified that Fred J. Kipper was not the owner of the property, was not authorized to execute the agreement and that the fee owners of the property were three men named Meyer. The Meyers then brought suit against Appellees for damage to their fee.

Appellant, the insurance carrier for Appellee, was promptly notified of the suit, however, Appellant declined to defend Appellees or to accept liability for any loss.

Thereafter, judgment was entered in favor of the Meyers and against Appellees for the sum of $4,000 plus court costs which were duly paid by Appellees.

Appellees then sued Appellant on the contract of insurance.

After trial to the court, judgment was entered for Appellees and Appellant has perfected its appeal here.

Appellant is before us on five points of error, the first being that of the trial court in entering judgment in favor of Appellees

for attorney's fees, as the Appellant had no duty to defend the case because the suit was for willful and intentional damage, which was not covered by the policy.[1]

The portions of the petition filed by the Meyers in their lawsuit against Appellees, which are relevant here, are as follows:

"Heretofore towit during the month of December, 1965, the partnership, intentionally, wrongfully, and wilfully broke plaintiffs' close, and entered into and upon the land and premises of the plaintiffs, without their consent, and trespassed upon plaintiffs' land to the serious damage of plaintiffs, being the land and premise of the plaintiffs lying in Travis County, Texas, located on the Bee Cave Road, about seven miles west of the City of Austin, said premises known as Cedarcrest.

The partnership, its agents, servants, and employees took and appropriated to their own use, with the intent to so appropriate the same, sand, dirt, and gravel, and rock to be incorporated and consumed in its highway project heretofore referred, being towit, 5,744 cubic yards of said sand, dirt, and gravel, and rock, and said materials were actually used and consumed in said project. The reasonable cash market value of said material at said time and place was the sum of twenty-five (25¢) cents per cubit foot or the sum of $1,438.50, in which amount by its wrongful appropriation the partnership was benefited; and in law and equity the defendants owe the plaintiffs restitution by way of quasi contract.

IV.

Plaintiffs' tract of land aforesaid was particularly valuable at said time and place as residential property. It was ideally located, and the highest and best use of said property was for such purpose. As a result of the partnership's wrongful act in digging out the hillside, plaintiffs' tract was damaged in the difference between the reasonable cash market value of said land and premises before said injury and after said injury in the sum of $7,500.00.

---

1. The provisions of the insurance policy pertinent to this suit are as follows:
   1. "Coverage D—Property damage Liability—Except Automobile To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."
   2. Endorsement No. 7—The letters "UND–1680–RI: 'Occurrence' Basis-Property Damage. 'It is agreed that such insurance as is afforded by the policy under Coverage D—Property Damage Liability—Except Automobile applies subject to the following provisions:
      1. The word 'accident' except as used in Paragraph II hereof is amended to read 'Occurrence.'
      2. The word 'occurrence' as used herein shall mean either (a) an accident, or (b) in the absence of an accident, a condition for which the insured is responsible which during the policy period causes physical injury to or destruction of property which was not intended.
   3. Endorsement No. 2, under Paragraph I: "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury sustained by any person or organization and arising out of the following hazards in the conduct of the named insured's business, and the company shall defend any suit against the insured alleging such injury and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent . . . Hazard C—Invasion of Privacy, Wrongful Eviction or Wrongful Entry.
   4. "Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy, the company shall: (a) Defend any suit against the insured alleging such injury, . . . or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent. . . . "

### V.

The trespass and appropriation of plaintiff's property has wilful, and without excuse, and defendants have become liable to plaintiffs for such wilful and intentional act for exemplary damages in the sum of $2,500.00."

Appellant contends that from the portions of the petition set out above, the suit was for willful and intentional damage to property. That under the most liberal construction of the policy, insofar as coverage is sought to be granted by virtue of the "occurrence" definition, it still does not cover damage which was intended. That with the lawsuit being filed for "willful and intentional damage," the allegations of the petition thus controlled the duty of the Appellant company to defend the suit. That, consequently, the action of the trial court in rendering judgment for attorney's fees was wrong.

■ Appellant's duty to defend is determined by the allegations of the petition in the prior suit. Heyden Newport Chemical Corporation v. Southern General Insurance Company, 387 S.W.2d 22 (Tex.1965).

■ An examination of the allegations of that petition compels the conclusion that the suit was one in trespass for Appellees' "intentionally, wrongfully and wilfully" entering upon the Meyers' land and inflicting "serious damage." An intentional tort is neither an "accident" nor an "occurrence" within the terms of the policy, and as a result, Appellant had no duty to defend in the prior suit.

■ Appellant's second and fifth points of error, which we group together for discussion, are the error of the court in rendering judgment in favor of appellees because there was no proof offered by Appellees that the amount of settlement was reasonable and made in good faith; that the Appellees took no action, or did not attempt in any manner, by way of cross-action, to recover from Fred. J. Kipper, their damages, nor to offset any amount which was owed to Fred J. Kipper for the market value or royalty owed on the dirt in question.

Under Coverage D, Property Damage Liability (Except Automobile), set out above, Appellant agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof caused by accident.

Appellant has paid the Meyers the amount of judgment rendered against them. We must overrule these points inasmuch as the burden of proof would fall upon Appellant to establish the manner and amount in which the judgment rendered could have been reduced. This it failed to do. See American Fidelity & Casualty Co., Inc. v. Williams, 34 S.W.2d 396 (Tex. Civ.App.1931, writ ref'd). Butler Brothers v. American Fidelity Company, 120 Minn. 157, 139 N.W. 355 (1913).

■ In this connection, we are of the opinion that the judgment should be modified to delete therefrom the money Appellees agreed to pay Mr. Kipper which is 5¢ per yard for 5744 cubic yards of borrow or $287.20. Appellant should not be required to pay for this item used in the road construction to Appellees' benefit.

Appellant's third point of error is that of the Court in rendering judgment in favor of Appellees, because no coverage existed for the loss in question, as such loss was for property damage which was intentional, and, was a mistake in business judgment in not ascertaining the title to the property before removing it.

We overrule this point.

■ The rule that contracts of insurance strictly construed against the insurer is so generally accepted as a legal maxim that authority for such need not be cited.

Appellant has referred us to cases in other states concerning intentional injury and damages under liability policies. These

cases seem to hold that where acts are voluntary and intentional, and injury is the natural result of the act, the result was not caused by accident, even though that result may have been unexpected, unforeseen, and unintended. Thomason v. United States Fidelity and Guaranty Company, 248 F.2d 417, Fifth Circuit (1957). In *Thomason*, the insured, had directed a blade man to clear off some ground up to some "iron stakes," which had been placed in the ground. The property to be bladed was adjacent to a Country Club, and there were some similar iron stakes which marked the out of bounds marker for a fairway. The blade man cleared a portion of the Country Club property up to the out of bounds markers. It was concluded that there was no insurance against liability for damages caused by mistake or error. This line of reasoning was also followed in Albuquerque Gravel Prod. Co. v. American Emp. Ins. Co., 282 F.2d 218, Tenth Circuit (1960); C. Y. Thomason Co. v. Lumbermens Mutual Casualty Co., 183 F.2d 729, Fourth Circuit (1950). There is another line of authority, hereinafter cited, of which Texas is a part, that holds a different view.

■ Appellees contend, and we so hold, that the removal of the "borrow" material from the property owned by Meyers was an occurrence or accidental damage or injury to the property of another which is included within the provisions of the policy.

Appellees, in seeking a broader and more comprehensive coverage than was afforded by the original policy tendered them, had their policy enlarged by Endorsement No. 7, to include "a condition for which the insured is responsible which during the period policy causes physical injury to or destruction of property which was not intended."

In the case of Massachusetts Bonding and Insurance Company et al. v. Orkin Exterminating Company, Inc., 416 S.W.2d 396 (Tex.1967), the Supreme Court of Texas defined the term accident as follows:

"We construe the term 'accident' as used in the policy to include negligent acts of the insured causing damage which is undesigned and unexpected. See Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899 (1934); Travelers Ins. Co. v. Reed Co., 135 S.W.2d 611 (Tex.Civ.App.1939, writ dism'd judgmt. cor.); Anchor Casualty Co. v. McCaleb, 178 F.2d 322 (5th Cir. 1950); American Indemnity Co. v. Jamison, 62 S.W.2d 197 (Tex.Civ.App.1933, no writ); Bundy Tubing Co. v. Royal Indemnity Co., 298 F.2d 151 (6th Cir. 1962); Maryland Casualty Co. v. Mitchell, 322 F.2d 37 (5th Cir. 1963)."

In the same case the Court of Civil Appeals (400 S.W.2d 20, 26) held:

"While there is authority to the contrary, the majority rule appears to be that stated in Appleman, Insurance Law and Practice, Vol. 7A, Sec. 4492, p. 7, as follows: 'Injuries resulting from ordinary negligence are considered to have been accidental as has been the case even though gross negligence were shown, where there was no actual intent to injure.'

The Texas cases support this statement of the law. American Indemnity Co. v. Jamison, Tex.Civ.App., 62 S.W.2d 197; Travelers Ins. Co. v. Reed Co., Tex.Civ.App., 135 S.W.2d 611, dism. judg. corr.

There is no evidence that the lindane was applied for the purpose of injuring the rice located in the warehouse, or with the intent to cause damage to Gulf Coast Rice Mills. Since the claim of Gulf Coast Rice Mills was predicated on acts committed negligently, even in violation of law, but not with the intent to inflict injury, such claim was within the coverage of the insurance policy. Bundy Tubing Company v. Royal Indemnity Co.

(6th Cir. Mich.) 298 F.2d 151; Maryland Casualty Co. v. Mitchell, 322 F.2d 37 (5th Cir. Tex.); Cross v. Zurich General Accident & Liability Co., (7th Cir. Ill.), 184 F.2d 609."

In commenting on this case Appellant cites us to the last paragraph of the opinion of the Court of Civil Appeals, set out above, and argues that the case is not applicable because the damages were predicated on acts which were committed negligently. We do not agree to this distinction. It is difficult for us to conceive of Appellees intending to injure the Meyers who were ultimately found to be the true owners of the property.

Cases from other jurisdictions in support of our holding are: Coy McAllister, d/b/a Coy McAllister Excavating v. Hawkeye Security Insurance Co., a Corporation, 68 Ill.App.2d 222, 215 N.E.2d 477, Second District, 1966; Reuben F. Gray v. State of Louisiana, 191 So.2d 802, Court of Appeals of Louisiana, 1966, writ ref'd.

We cannot agree with Appellant's contention that because the record title to the property from which the borrow was taken was in the Meyers, that such record title constituted actual knowledge on the part of Appellees as to the ownership of the property. The recording statutes place notice only on those who are bound to search the record for such instrument and such knowledge would be imputed only to those such as creditors, mortgagees or holders of vendor's liens. See 49 Tex.Jur.2d, Records & Registrations, sec. 85, p. 412 and the cases there cited.

Appellant's fourth point, which we overrule, is the error of the court in rendering judgment as described because no coverage existed under the policy due to the exclusion which did not allow recovery for damage to property which was in "the care, custody and control" of the Appellees.

This section of the contract of insurance is obviously inapplicable under the facts of this case as the "borrow" was under the care, custody and control of Fred J. Kipper. See Maryland Casualty Co. v. The Golden Jersey Creamery, 389 S.W.2d 701 (Tex.Civ.App.1965, writ ref'd n.r.e.).

We reverse in part and reform the judgment so as to disallow the $287.20 paid Kipper for the borrow and to disallow the $1,000.00 attorney's fee and as reformed the judgment is affirmed.

Reversed in part and reformed, and as reformed, affirmed.

SHANNON, Justice (concurring).

In connection with appellant's point that appellees offered no proof that their settlement in the prior suit was reasonable and made in good faith, there seems to be no Texas authority in point. The out-of-state authority seems to be that proof of settlement of the prior case which the insurer refused to defend is presumptive evidence of liability for the amount of the settlement, and the insurer has the burden of showing otherwise. Butler Brothers v. American Fidelity Company, 120 Minn. 157, 139 N.W. 355 (1913); Elliott v. Casualty Assn. of America, 254 Mich. 282, 236 N.W. 782 (1931); *contra,* Jones v. Southern Surety Co., 210 Iowa 61, 230 N.W. 381 (1929).

I also agree that coverage was afforded by appellant's policy of insurance. Appellant's argument is that appellees intentionally took to the borrow material, and as a consequence, that the transaction could not have been an "accident" or an "occurrence" within the terms of the policy. However, the culpable act of appellees was their failure to ascertain the ownership of the tract of land prior to the removal of the borrow material. The entire record indicates that appellees negligently, rather than intentionally, failed to discover that ownership thereby inflicting undesigned and unexpected damage to the owners. In my opinion, such a transaction constituted an "accident" within the meaning of the

insurance policy and the definition in Massachusetts Bonding and Insurance Company et al v. Orkin Exterminating Company, Inc., 416 S.W.2d 396 (Tex.1967).